THE STATE, EX REL. ALBERT B. C. SALMON, v. JOSEPH E. HAYNES, MAYOR, &c.

1. The common council of Newark, being the sole judge of the election of its members, may, upon a contest respecting the election of one of its members, appoint a committee to take testimony, and to report the facts and the evidence to the council.

2. It may also authorize the committee to employ a stenographer for the purpose of taking such testimony, and if the committee employ the stenographer before the resolution giving such authority becomes effective, the common council may subsequently ratify such employment.

3. When the common council pass, over the veto of the mayor, a resolution appropriating money to pay a person so employed, it is the duty

of the mayor to countersign the warrant drawn for such appropriation, and that duty will, on his refusal to perform it, be enforced by *mandamus*.

On motion for *mandamus*.

Argued at June Term, 1887, before Justices DEPUE, VAN SYCKEL and MAGIE, upon an agreed state of facts.

For the relator, *Joseph Coult*.

For the mayor, *S. J. Macdonald*.

The opinion of the court was delivered by

MAGIE, J.   Relator seeks a *mandamus* requiring the mayor of Newark to affix his signature to a warrant, drawn by the proper officers of the city, upon the city treasury, in favor of relator, for $73.50.

By the agreement of counsel it appears that this warrant was drawn upon the authority of the following resolution of the common council, viz.:

" *Resolved*, That the sum of seventy-three dollars and fifty cents be and the same is hereby appropriated to A. B. C. Salmon, in payment of bill for services in the Seventh ward contested election matter."

This resolution was originally passed March 4th, 1887, was vetoed by the mayor on March 18th, 1887, and on the next regular meeting was unanimously passed by the council over the veto.   The warrant was afterward presented to the mayor, and his signature thereto duly requested, which he refused.

In *Ahrens* v. *Fiedler*, 14 *Vroom* 400, the charter and ordinances of Newark were examined, and it was determined that whenever an appropriation of money from the city treasury had been duly made, the duty of the mayor in signing a warrant to draw the money was a ministerial one, which would, in any proper case, be enforced by *mandamus*.   It was also

Salmon v. Haynes.

·determined that when the common council had, by resolution, .appropriated money for a lawful purpose, and within the authority accorded by the charter, and their resolution had been vetoed by the mayor, and afterward so passed over the veto as to become effective, the mayor could not nullify it by refusing to sign the warrant required to draw the appropriation from the treasury.

The contention on behalf of the mayor in this case is that the resolution appropriating money to relator was without authority of law.

The following facts, material to the question involved, are disclosed by the agreement of counsel. The common council had received from William E. O'Connor a petition and protest, whereby he claimed to have been elected as a member of that body from the Seventh ward, and contested the election of Michael McLaughlin, who had been admitted as a member upon the face of the returns. On January 4th, 1887, the petition and protest were referred to a special committee. On January 7th, 1887, that committee reported that they had not completed the examination of the case, and asked the passage of a resolution authorizing them, among other things, to take the testimony of witnesses and report the facts as found by them, and the testimony taken by them in detail, and to expend not over $100 for stenographer, copyist, &c. This resolution was passed and sent to the mayor. It was neither signed by him, nor was it vetoed. It was filed by him after the expiration of ten days, and so, by the provisions of the charter, became a valid resolution on January 19th, 1887. Relator had been previously employed by the committee, and rendered the services for which he seeks payment before January 14th, 1887, when the committee reported the facts found, the contestant abandoned his contest, and the sitting member was thereupon declared entitled to his seat. Relator's bill was presented to the finance committee, who reported it to the common council, recommending the adoption of the resolution first above set forth, appropriating the sum demanded.

The mayor first contends that the common council had no

authority to appoint the committee, or to empower them to do the acts comprised in the resolution which authorized them to expend money for a stenographer.

The common council, by the charter, is made the sole judge of the election, returns and qualifications of its members. They were thus required to adjudicate upon the contest raised by O'Connor's petition. The duty of making that adjudication could not be delegated to any committee. But that is not what the common council did in this case. The duty imposed on the committee was simply to take testimony, and to report the facts they found, with the testimony taken. This is the well-known course of proceeding in every body having power to judge of the election of its own members, in case an election is contested. No other course seems practicable, and no injury is thereby done to the contestants, for the adjudication is made, upon the facts and testimony presented, by the whole body.

In my judgment, the authority to appoint the committee, and to direct it to do the acts required by the resolution, was clear.

It is next urged that the committee had acquired no authority to employ relator when his services were rendered, because the resolution had not then become law.

To this contention, relator's counsel replies by insisting that the resolution in question, being designed to aid the common council in the performance of a duty as judges of the right to office of one of their number—a duty in which the mayor had no part—was not required to be sent to the mayor for approval, but became effective as soon as passed.

It is to be noted that the resolution does not give authority to employ a stenographer, but only to expend money for that purpose. Whatever may be said in favor of the council's right to take such steps as are necessary for the performance of their judicial duty, without seeking the mayor's concurrence, yet every appropriation of money is required to be by resolution or ordinance, and neither can take effect until it has been presented to the mayor and approved by him, or vetoed,

Taylor v. Smith.

and passed over his veto, or filed without either approval or veto.

But it is unnecessary to decide whether the mayor's approval of this resolution was required. The common council had ample authority to employ a stenographer by resolution duly adopted. What it had authority thus to do it could in like manner ratify. This the case shows the council did, by appropriating money to pay for the services of the person employed, and by passing the resolution of appropriation over the mayor's veto.

Moreover, the services of relator were actually rendered, and received by the city. The common council have recognized the obligation of the city and duly appropriated money to discharge it. The resistance of the mayor, evidenced by his veto, has been overcome in the mode fixed by the charter, so that the appropriation has been made by the city. Nothing remains but to draw the money from the treasury. The case, therefore, is identical with that disposed of in *Ahrens* v. *Fiedler, ubi supra.*

For these reasons, a *mandamus* should issue as prayed for, and since all the facts are before the court by the agreement of counsel, the writ should be a peremptory one.