EDWARD P. STOUT, PLAINTIFF-RESPONDENT, v. CITY OF BAYONNE, A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT.

Argued May 5, 1937—Decided September 23, 1937.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and PARKER.

For the defendant-appellant, *Alfred Brenner*.

For the plaintiff-respondent, *John Drewen* (*Drewen & Nugent*, of counsel).

PER CURIAM.

This suit was brought by the plaintiff, an attorney and counselor-at-law of this state, to recover the reasonable value of legal services rendered by him to the defendant, the city of Bayonne, in the prosecution of writs of *certiorari* and in an appeal before the state board of taxes and assessments for the increase of the assessed valuation of second-class railroad properties within the city, being twenty-nine separate parcels owned by various railroads within the city.

The city's object in this litigation was to gain an increase in such valuations of at least $500,000 over and above those originally assessed by the state board of taxes and assessments on these properties for 1930.

In January, 1931, authorization was given to the plaintiff by resolution of the city commission to review by *certiorari*

the final determination of the state board in respect to the 1930 assessments and to prosecute the same to final judgment, and expressly agreeing to pay Edward P. Stout, the plaintiff herein, just compensation therefor. In May or June, 1931, and again in January, 1932, as a result of conferences with the plaintiff, the mayor and director of revenue and finance and the head of the city's law department (which it was admitted he was) engaged the plaintiff to continue his efforts to accomplish the purposes aforesaid by review by *certiorari* of the state boards' assessment for 1931, in connection with litigation relating to the 1930 assessment, which was still pending, and in January, 1932, necessary petitions for writs to review the 1931 assessments were signed and sworn to by the mayor, and the two groups of cases were presented and argued in the Supreme Court at the same time. At such conferences a policy was agreed upon, and incidentally in January, 1932, the plaintiff was engaged to appear, if necessary, before the state board on complaint of the city against the 1932 assessments, and that necessity arose and the plaintiff so appeared, the object always being to bring the assessments to the figure of $500,000 in excess of the original assessments of 1930, the reason being not only to gain the aggregate increase in itself, but to have these railroad properties valued for tax purposes on a par with other industrial properties contiguous thereto.

The plaintiff performed all of these services for which he was engaged, and as a result, the city's purpose was accomplished.

The failure of the city to compensate plaintiff resulted in this suit brought by the plaintiff in which the jury rendered a verdict of $12,500, and the city appealed.

Incidentally it appeared that the necessity of the employment of the plaintiff was that the city had "a very sick city attorney at the time, who was not able to carry on the work."

The first point made by the city is that the trial judge erred in refusing to grant a nonsuit and in refusing to direct a verdict for the defendant.

We think the action of the trial judge was proper.

The city argues that the "plaintiff did not, prior to the suit, present a detailed bill of items or demand, specifying particularly how such bill or demand is made up." But our examination of the bill of items satisfies us that there was certainly a substantial compliance with the requirement of the statute in such cases, which requirement was that there should be presented "a detailed bill of items ' or demands specifying particularly how such bill or demand is made up." 3 *Comp. Stat., p.* 3665.

The defendant also argues that the motions should have been granted because there was no proof of plaintiff's presentation of the bill to the city authorities.

We think there was proof from which the jury could and did infer that the bill was presented to and received by the duly constituted authorities of the city. There was, therefore, an issue of fact on this point, and it was properly submitted to the jury.

It is next argued that the motions should have been granted because "there was no proof of approval or disapproval by the mayor nor an order by the governing body for the payment of the claim."

But there was proof from which the jury might and did infer that the claim was presented to the mayor for his approval or disapproval as required by the statute (chapter 152, *Pamph. L.* 1917), and the action of the mayor in neglecting or refusing to approve the bill was in legal effect tantamount to disapproval.

It is next said in effect that the motions should have been granted because the engagement of the plaintiff as special counsel by the mayor without a supporting resolution was without authority. We think there is no merit in this argument. It ignores the original resolution. Moreover, the engagement of the plaintiff as special counsel for the city was within the corporate powers of the governing body. Even if it be conceded (which we do not concede) that the mayor and the diréctor of finance was without authority to conclude such engagement without resolution of the commission, it is nevertheless true that the services were actually rendered, and that the city acquiesced therein, and that in the very

nature of these services and what they achieved in the increase of its tax ratables the city cannot possibly avoid a ratification of the result. That plaintiff's compensation was not fixed by the terms of his engagement is of no moment, since the law allows him the right to recover on a *quantum meruit*. All the elements of a lawful claim against the city are thus presented. *Potter* v. *Metuchen*, 108 *N. J. L.* 447; 155 *Atl. Rep.* 369; *Byrne* v. *Wildwood*, 95 *N. J. L.* 287; 112 *Atl. Rep.* 305. It cannot be disputed that the very nature of the services rendered and of the result accomplished by plaintiff for the city, leaves the city no alternative but to accept the result and thus to ratify the services that procured it. For the city to do otherwise would be to repudiate the judicially established basis for the calculation of its increased tax against the railroad companies mentioned—an impossible proposition. The city could not avoid a ratification of what plaintiff has done for it, even if it might wish to.

It seems to be further argued that the plaintiff's claim was barred by the statute of frauds. This claim seems to be based upon the contention that the engagement of the plaintiff as to a part of his work rests exclusively from the earlier conference in May or June, 1931. It ignores the testimony to the effect that in January, 1932, in conference respecting the review of the 1932 assessments, the plaintiff was told by the mayor "whatever you think necessary, go ahead;" and it would seem that considering the objective of the city and the uncertainty as to when plaintiff's engagement could be performed, and the likelihood that it could not be ended within a year, the claim was not barred by the statute; for an oral promise which may not be performed within a year, and which in fact is not so performed, does not come within the ban of the statute, if full performance may be had within that time. *Reynier* v. *Associated Dyeing and Printing Co.*, 116 *N. J. L.* 481; 184 *Atl. Rep.* 780.

It is also said that a direction of the verdict should have been had because of the alleged resignation of the plaintiff in respect to his employment.

Our examination of the evidence in respect to this matter discloses that the letter upon which the contention rests had

no relation whatsoever to the matter of plaintiff's employment in question.

The next point is that the judge erred in allowing the interrogation of a witness as to collateral matters and the introduction of evidence for the purpose of refuting testimony as to collateral issues.

We have examined the record in view of this objection and find that the examination in question was for the purpose of showing the city's lack of good faith in resisting the plaintiff's claim, and for the purpose of showing motive and interest, and to test accuracy, veracity and credibility of the witness; and we find no prejudicial error.

Lastly it is said that there was prejudicial error in the charge of the court respecting the so-called burden of proof. We think there was not. The evidence was all in and the case was being presented to the jury for determination, and obviously there was no longer any question as to the burden of proof, so far as that term is concerned with the order of production of evidence; but at that stage the question arising from the rule as to burden of proof in its true sense, and the obligation of the plaintiff to make out his case by the required *quantum* of evidence, was evidently in the judge's mind as of the utmost importance for the consideration of the jury.

The judge had already properly charged that the burden was on the plaintiff to prove every material allegation in his case. The charge objected to was that "the burden of proof is upon the defendant to satisfy your minds that the charge made is exorbitant and in excess of the reasonable value of the services."

It seems to us that what the judge had in mind in thus charging was the plaintiff's undisputed proof as to the reasonable value of his services, and no doubt the jury so understood it. That proof the trial judge properly and accurately characterized in connection with that portion of the charge now challenged. He said: "During the course of the trial a prominent member of the bar has appeared here as a witness, Mr. Albert C. Wall, very well known to the court as well as to counsel, a man of a great many attainments and

parts; and he has testified that the charge [$12,500] that was made is a fair and reasonable charge. As against that the city has not produced one iota of testimony to the contrary. You have the right to give to that failure on the part of the city such weight as you think it merits in the light of all the surrounding facts and circumstances. Of course that does not necessarily mean that that should be or must be all-controlling. That is for you to determine, whether they could or could not answer it. You can be guided by what Mr. Wall says, or you do not need to be. You have the right to give full weight and credit to his testimony, or you have the right to reject it, or you have the right to accept it in part and reject it in part. Your judgment is supreme."

Now we point out that the record shows not only that there was no contradiction or qualification of Mr. Wall's testimony. It also showed an eminent fitness upon the part of Mr. Wall to judge as to the value of the services, and that his testimony justified fully and *in extenso* his estimate of $12,500 for the work accomplished as "unquestionably a reasonable and moderate charge." The defense saw fit to thus leave the matter without a word of contradiction or qualification. Incidentally, there was abundant proof that the plaintiff was well qualified by long and large experience in the particular field to conduct the litigation in which he was employed and successfully completed.

If any fault is to be found with the charge in question we are unable to see how it could conceivably have had the slightest prejudicial effect upon the defense. The judge did not direct a verdict. Far from it. He left to the determination of the jury the effect of the evidence, and permitted them to find a verdict either for the plaintiff or for the defendant, and if for the plaintiff in any amount they saw fit. In the circumstances of this case if there was technical error, it was not error of a prejudicial character, and the rule is that a misdirection by the trial judge will not constitute a sufficient ground for reversing a judgment unless after an examination of the whole case it shall appear that the error injuriously affected the substantial rights of the parties.

The judgment will be affirmed, with costs.