ESSEX COUNTY CIRCUIT COURT.

FRANK GRAD & SONS, INC., A CORPORATION, PLAINTIFF,
v. CITY OF NEWARK, A MUNICIPAL CORPORATION,
DEFENDANT.

Decided November 21, 1939.

For the plaintiff, *Edward R. McGlynn.*

For the defendant, *James F. X. O'Brien* (by *Raymond Schroeder*).

CAFFREY, C. C. J.   This is a suit by the plaintiff against the city of Newark for fees.   The facts are set forth in the following memorandum:

On July 15th, 1936, by resolution adopted by the Board of Commissioners of the defendant municipality on that date (No. 5853F) and also by resolution adopted on September 9th, 1936 (No. 6108), the plaintiff was appointed as the architect and engineer to prepare the preliminary plans, preliminary sketches and preliminary studies to accompany the application of the city of Newark (hereinafter designated as city) to the Works Progress Administration (hereinafter referred to as WPA) for the purpose of obtaining a grant from said WPA on four swimming pools and recreation buildings upon city owned real estate and for such services the plaintiff, under said resolutions, was to be paid by the city in the event not being approved by the WPA or not accepted by the city, one (1) per centum of the estimated costs of said proposed project or projects, not to exceed $1,500 for each

project. Should said projects, or any part thereof, be approved by the WPA and the city, and the said architects and engineers shall prepare final working drawings, plans, details and specifications, then under said resolutions, the plaintiff was to receive compensation from the city of Newark in accordance with the scheduled rates and rules and regulations of the American Institute of Architects (hereinafter referred to as Architects Institute). If said projects or any part thereof were not approved by the WPA, then as to such part or all of said projects which shall not be approved, the plaintiff was to receive not more than one (1) per centum as above stated, of the estimated cost of said projects not proposed and not to exceed $1,500 for each such project. In the preamble of both these resolutions so adopted by the defendant municipality, there is a recital indicating that in the congested areas of the city of Newark there is dire and urgent need for swimming pools and recreation buildings in connection therewith, which will serve for the betterment of the health and public welfare of the juveniles and citizens generally and that the use thereof will materially aid in the prevention of crime. There is also a further recital that the Works Progress Administration of the United States of America has offered to aid the city of Newark in the construction of such swimming pools and recreation buildings and requires that there accompany the application for such aid, certain preliminary plans, preliminary sketches and other preliminary studies, together with outline specifications and estimates, before said Works Progress Administration will consider the application or make any grant to the city of Newark. Pursuant to said two resolutions, the plaintiff did proceed with the work required to be performed by it.

The scheduled rates, rules and regulations of the American Institute of Architects, as referred to in the resolutions adopted by the defendant, contain, *inter alia*, the following:

1. The Architect's professional services consist of the necessary conferences, the preparation of preliminary studies, working drawings, specifications, large scale and full size detail drawings; the drafting of forms of proposals and contracts; the issuance of certificates of payment; the keeping

of accounts, the general administration of the business and supervision of the work, for which, except as hereinafter mentioned, a proper minimum charge, based upon the total cost of the work complete, is six per cent.

6. The rate of percentage arising from articles 1 and 2 hereof, i. e., the basic rate, applies when all of the work is let under one contract. Should the owner determine to have certain portions of the work executed under separate contracts, as the architect's burden of service, expense and responsibility is thereby increased, the rate in connection with such portions of the work is greater (usually by four per cent.) than the basic rate. Should the owner determine to have substantially the entire work executed under separate contracts, then such higher rate applies to the entire work. In any event, however, the basic rate, without increase, applies to contracts for any portions of the work on which the owner reimburses the engineer's fees to the architect.

9. Whether the work be executed or whether its execution be suspended or abandoned in part or whole, payments to the architect on his fee are subject to the provisions of articles 7 and 8, made as follows:

Upon completion of the preliminary studies, a sum equal to twenty per cent. of the basic rate computed upon a reasonable estimated cost.

Upon completion of specifications and general working drawings (exclusive of details) a sum sufficient to increase payments on the fee to sixty per cent. of the rate or rates of commission agreed upon, as influenced by article 6, computed upon a reasonable cost estimated on such completed specifications and drawings, or if bids have been received, then computed upon the lowest bona fide bid or bids.

During the preparation of the preliminary studies and of the specifications and general working drawings, it is proper that payments on account be made at monthly or other intervals, in proportion to the progress of the architect's service, and so as to aggregate in each period not more than the sums described above.

From time to time during the execution of work and in proportion to the amount of service rendered by the architect,

payments are made until the aggregate of all payments made on account of the fee under this article reaches a sum equal to the rate or rates of commission agreed upon as influenced by article 6, computed upon the final cost of the work.

Payments to the architect, other than those on his fee, fall due from time to time as his work is done or as costs are incurred.

No deduction is made from the architect's fee on account of the use of old materials, penalty, liquidated damages or other sums withheld from payments to contractors.

13-A. The words "the cost of the work," as used in articles 1 and 9 hereof, are ordinarily to be interpreted as meaning the total of the contract sums incurred for the execution of the work not including architect's and engineer's fees or the salary of the clerk of the works, but in certain rare cases, *e. g.,* when labor or material is furnished by the owner below its market cost or when old materials are re-used, the cost of the work is to be interpreted as the cost of all materials and labor necessary to complete the work, as such cost would have been if all materials had been new and if all labor had been fully paid at market prices current when the work was ordered, plus contractor's profits and expenses.

The projects contemplated under the two resolutions are generally known as

1. Hayes Park West.
2. Hayes Park East.
3. Boylan Street.
4. Clifton and Seventh Avenues.

The plaintiff alleges that part of the work to be performed in connection with the projects described in said resolutions, was under separate contracts and therefore as to some of the work, which was entirely in connection with mechanical equipment to be installed in said pools and buildings connected therewith, that the rate of six per cent. (6%) of the total cost is applicable and that as to the balance of the work, the basic rate of six per cent. plus an additional four per cent. is applicable.

There is no dispute that the plaintiff prepared the *preliminary* plans, sketches and studies described in said two

resolutions and it is also conceded that the defendant delivered same to the Works Progress Administration, with written applications which described in detail the proposed projects and included as completely as could be, an estimated list of the expenses to be incurred in connection with the cost of said projects, which included in each instance and on each one of said four projects, an item for architect's services and commissions and for the supervision of said work by the plaintiff. The application of the defendant to the WPA for a grant toward the estimated cost of said projects, was accepted and approved and the plaintiff, in accordance with the tenor of the foregoing two resolutions adopted by the defendant municipality, prepared *final* working drawings, plans, details and specifications, all of which were accepted both by the defendant and by the Works Progress Administration.

The work in connection with each of said four projects was commenced and did continue from the time of said acceptance up to the present time, with the exception of a period when the defendant corporation suspended operations thereon.

Subsequent to the original grant of a contribution of the Works Progress Administration to the four projects mentioned herein, a supplementary or amended application for an additional grant was made (which was only for labor to be performed by the Works Progress Administration) and, said supplemental application was prepared in writing, by the defendant and said application submitted to the Works Progress Administration and included therein, in addition to all other estimates of the various costs to be incurred in the completion of said projects, was an item in each instance, for architectural services.

From time to time during the progress of said work, the plaintiff submitted bills to the defendant for payment on account of its services rendered up to the date of the rendition of said bills. The bills so rendered by plaintiff were calculated by it in accordance with the rates and charges of the Architects Institute and as in said two resolutions referred to and especially in accordance with paragraphs numbered 1 and 6 (*supra*) of said schedule.

The original application to the Works Progress Adminis-

tration for a grant covering said swimming pools shows a federal contribution of $249,465.60 and a contribution by the city of Newark (sponsor) of $364,279.58, making a total of $613,745.18. By virtue of the supplemental application to the Works Progress Administration (which application was approved) the federal contribution for these projects has been increased to a total of $625,721.42. The city's contribution has been increased to $641,661.31, making the present cost of said four projects as being in the sum of $1,267,382.73.

The budget of the city of Newark for the fiscal year 1936 contains no appropriation of moneys for swimming pool projects or for any work in connection therewith. However, on December 9th, 1936, the Board of Commissioners of the city of Newark adopted an ordinance (No. 6496) providing for the issuance of $410,000 general improvement bonds of the city of Newark, in which is included $150,000 to be raised to finance the construction of the four public swimming pools aforesaid. This ordinance (No. 6496) is the initial step taken by the defendant to raise moneys for the purpose of financing these swimming pool projects.

On December 30th, 1936, resolution numbered 6648 was adopted by the Board of Commissioners of the city of Newark, which said resolution makes reference to the July 15th, 1936, and September 9th, 1936, resolutions previously adopted by the defendant, including a recital to the effect that the defendant did agree to pay compensation to the plaintiff in accordance with the schedule of rates, rules and regulations of the American Institute of Architects. Said resolution numbered 6648 further recites that the aforesaid projects together with the estimated costs thereof, have been duly approved by the WPA and the city and that the plaintiff prepared and delivered both to the defendant and to the WPA, the completed final working drawings, plans, details and specifications for the four separate swimming pools and recreation buildings above referred to, which final working drawings, plans, details and specifications have been duly approved by the sponsor and the WPA and that actual work has been commenced on each and every one of said swimming pools and recreational buildings and that by reason thereof, the plaintiff has pres-

ently become entitled to receive payment as compensation for the preparation of the aforesaid final plans, &c., a sum equal to sixty per cent (60%) of their several fees for the aforesaid respective projects and the balance from time to time, in proportion, during the execution of the work, "as by reference to the rates, rules and regulations of the American Institute of Architects more fully appears." Said resolutions further recited that the total construction cost is based on the cost estimated in the applications heretofore submitted to the Works Progress Administration upon which a grant from the said Works Progress Administration has been received. This resolution directed the payment to the plaintiff of $2,732.17 for the balance due of the sixty per cent. (60%) of the architectural and engineering fees for the Clifton and Seventh avenues project, the sum of $8,049.27 for the balance due of the sixty per cent. (60%) of the architectural and engineering fees for the Hayes Park East project, the sum of $5,107.48 for the balance due of the sixty per cent. (60%) of the architectural and engineering fees for the Boylan street project and the sum of $4,593.86 being the balance due on sixty per cent. (60%) of the architectural and engineering fees on the Hayes Park West project. These figures are in accordance with section 9 (*supra*) of the schedule of rates of the American Institute of Architects referred to herein. Following the adoption on December 9th, 1936, by the Board of Commissioners of the city of Newark of ordinance numbered 6496, the first contract to be awarded by said city in connection with said swimming pools, was to cover installation of an electrical system. This award was made on February 24th, 1937. Between the latter date and August 11th, 1937, contracts for mechanical equipment and materials to be used in the construction of said swimming pools were let by the city and totaled $428,992.92.

The plaintiff concededly has performed on its part all work necessary to be performed so as to entitle it to the payment of its fees and charges, as the same may be due. The defendant, however, contends that the compensation of the plaintiff should be computed in accordance with paragraph 13-A (*supra*) and not in accordance with paragraphs 1, 6 and 9

thereof. The plaintiff contends that paragraph numbered 13-A in no way changes the scope, application, construction or interpretation of paragraphs 1 and 6 set forth above and that obviously paragraph numbered 13-A was intended and does cover situations where labor or material is furnished by the owner, below its market cost or where old materials are re-used, in which event the architect's commissions are to be calculated on an amount which would represent the cost of the materials and labor necessary to complete the work, as such cost would have been if all materials had been new and all labor had been paid at market prices current when the work was ordered, plus contractor's profits and expenses. Plaintiff further contends that inasmuch as part of the work which was contemplated to be performed in connection with these projects, if said work actually commenced, was to be awarded under separate contracts and that practically all of such separate contracts were intended and actually did cover mechanical equipment to be installed in said pools and buildings connected therewith, such as filtration equipment, electrical fixtures and heating equipment, that therefore the basic rate of six per cent. (6%) directed in the schedules of said Architects Institute, was increased by adding thereto an additional four per cent (4%) of the cost of said mechanical equipment.

As hereinbefore stated, the plaintiff corporation concededly prepared the preliminary plans, sketches and studies described in the resolutions adopted by the defendant municipality and accompanying the same were written applications prepared and signed by the defendant, delivered to the Works Progress Administration by the defendant, setting forth in detail all of the proposed projects, including not only a statement that the plans and specifications had been prepared by the plaintiff, but a statement indicating that the work was to be done under the supervision of the plaintiff. An item covering the fees of the plaintiff was also included on the printed application form submitted by the sponsor defendant.

The estimated amount in both the original applications and supplementary or additional applications prepared and signed by the defendant for the defendant's contribution in connec-

tion with said projects to cover plaintiff's fees and commissions, were calculated in accordance with paragraphs numbered 1, 6 and 9 of the rates of the American Institute of Architects quoted above and were based on the estimated amount of the total cost of said projects, including both the Works Progress Administration grant and the contribution of the defendant. The individual statements or requisitions submitted by the plaintiff were itemized for each project and the amount of each bill was based on the amount spent or contributed by the Works Progress Administration *and* on the amount contributed by the city of Newark—one item being for six per cent. (6%) services, another item for the four per cent. (4%) additional services in connection with the mechanical equipment. The net amount of each individual bill, in each instance, would represent the amount of money presently due to the plaintiff after crediting any payments previously made to the plaintiff. These bills as submitted were paid by the defendant.

The defendant contends that the labor furnished on the projects involved in the present suit, was furnished to it free of charge by the Works Progress Administration and that any fee due to the plaintiff should be based on the market price of said labor which would be what a private contractor would charge and not on the cost of Works Progress Administration labor, the defendant claiming that it has no control whatsoever over Works Progress Administration labor. The city further contends that the schedule of the American Institute of Architects (admittedly adopted in 1908, and revised in 1916, 1921 and 1922) has no application to the claim of the plaintiff for that it does not refer directly or indirectly to Works Progress Administration projects and hence furnished no basis for calculating any commissions for services performed. This latter contention on the part of the city, in my opinion, cannot be given any serious consideration by this court, as a reading of resolution numbered 5853-F (adopted July 15th, 1936); resolution numbered 6108 (adopted September 9th, 1936); resolution numbered 6648 (adopted December 30th, 1936), all make reference to the schedule of rates, rules and regulations of the American Institute of Architects, in my opinion,

*then in effect, i. e.,* as of the date of adoption by the defendant of said resolutions. The defendant municipality through its Board of Commissioners, undoubtedly contemplated that the fees and charges of the plaintiff be computed in accordance with said schedule of rates regardless of the date of adoption by Architects Institute of such rates or schedule of fees. Said schedule of rates in its entirety as contemplated by the parties hereto, is annexed to the complaint filed herein and to the affidavits submitted by and in behalf of the plaintiff herein in this cause. Counsel for the defendant admitted that this schedule was the one within the contemplation of the Board of Commissioners of the city at the time of the enactment of the resolutions authorizing said employment.

The defendant further contends that it and the Works Progress Administration, in a dual capacity, are engaged in the construction of the projects referred to and that as such, the defendant is not an "owner" within the purview of such term as used in the Architects Institute schedule and that the grant of the federal government to the city of Newark should not properly be the basis for the payment to the plaintiff of any commissions. This contention, too, is without merit for that the employment of Works Progress Administration labor on these and similar projects tends to decrease the relief burdens of the defendant municipality and these pools and recreation buildings will serve for the betterment of the health and public welfare of the juveniles and citizens generally, of the city of Newark living within the congested areas where said projects have been constructed.

On April 5th, 1939, ordinance numbered 4566 was adopted by the Board of Commissioners of the city of Newark, authorizing and providing the raising of an additional $500,000 for the purpose of financing the cost of construction of said swimming pools. With the adoption of this ordinance, the city has appropriated the total sum of $650,000 to date, to defray the expenses of said construction work. (See ordinance No. 6496 adopted December 9th, 1936, *supra.*)

The defendant municipality, in its answer, intimates that the contract entered into by the plaintiff with the defendant, pursuant to the resolutions aforementioned, is null, void and

illegal "by the statutes in such case made and provided," in that at the time of the adoption by the defendant of the resolutions numbered 5853-F and 6108, "no appropriation had been provided for in the budget of the defendant covering any liability that might result from said alleged contract" entered into with the plaintiff pursuant to said two resolutions.

The attention of this court has been directed by counsel to *R. S.* 40:2-29, the source of this legislation being found in section 301 at page 539 of *Pamph. L.* 1936. However, a reading of section 507 of chapter 211, of the laws of 1936, at page 552, as to the effective date of this act, indicates that "this act shall take effect immediately as regards all matters, terms and provisions affecting budgets, tax ordinances and tax resolutions for the fiscal year one thousand nine hundred thirty-seven and any subsequent fiscal year *and in all other respects,* shall take effect on December thirty-first, one thousand nine hundred thirty-six." This "effective date" is of course omitted in our Revised Statutes of 1937 and can only be ascertained from an examination of page 552 of *Pamph. L.* 1936.

This court is of the opinion that the projects here under consideration are "capital projects" and that the contract entered into between the plaintiff and the defendant is not an illegal one.

It should be noted that the resolutions authorizing the employment of the plaintiff, were adopted on July 15th, 1936, and September 9th, 1936, respectively; that the ordinance adopted by the city on December 9th, 1936, to raise $150,000 was another step in the construction of these projects and that on December 30th, 1936, a resolution was adopted by the city authorizing the payment to the plaintiff of the several sums therein mentioned. In this posture of the case and under section 507 of *Pamph. L.* 1936, *supra, R. S.* 40:2-29 has no application to the case at bar. However, to remove any doubt, the legislature passed an act validating contracts heretofore made by any city for the construction of public swimming pools and providing for the financing of such contracts. This act approved April 28th, 1938, to take effect immediately, is chapter 99 of the laws of 1938, at page 219 (1938 *N. J. S. A.* 40:2-29 *note*), and provides that: "All contracts

heretofore made on behalf of any city by the board of commissioners of such city council, or other governing body of such city which provide for the doing of any work or the rendering of any services or for the purchase of any materials or supplies necessary for the construction of public swimming pools in said city are hereby ratified, validated and confirmed notwithstanding that said contracts require the expenditure of money in excess of the amount heretofore appropriated for the construction of such swimming pools.

"Notwithstanding anything contained in section 40:1-59 of the Revised Statutes, any payments required to be made by said city pursuant to such contracts may be financed from the proceeds of bonds heretofore or hereafter authorized to be issued for the construction of such swimming pools pursuant to and within the limitations prescribed by the local bond law."

This court is of the opinion that any questions as to the legality of the plaintiff's agreement for compensation as set forth in the resolutions referred to herein were removed by the passage of said chapter 99 of the laws of 1938, *supra*.

Therein lies the difference between the case of *Frank Grad & Sons, Inc.*, v. *City of Newark*, 118 *N. J. L.* 376; 193 *Atl. Rep.* 177.

On or about June 21st, 1939, the plaintiff submitted to the defendant, four separate requisitions or bills, one for each project described therein, as follows: Hayes Park West, $3,636.54; Hayes Park East, $5,670.78; Boylan street, $4,140.10; Clifton and Seventh avenues, $4,247.50, making the total sum of $17,694.92 then claimed to be due to the plaintiff as of the date of the rendition of said statements or bills. This indebtedness is based upon the total cost of the work in the order of completion as it was known or estimated to be, at the time these bills were rendered. The defendant refused to pay the same claiming that the plaintiff was not entitled to any fees for the amount of the cost of said projects represented by the amount of the contributions which had been or which were to be made by the Works Progress Administration toward the total cost of each of said projects, but that the plaintiff was only entitled to the percentages described

in the resolutions and architect's schedules based upon the actual cost of the projects as reflected by the amount which had been paid or was to be paid by the city of Newark as its contribution toward the completion of each of said four projects. This was the first time that this contention was so raised by the defendant municipality.

There is no dispute that the work claimed to have been done by the plaintiff has been performed on its part, from the date of the original resolution recited herein down to and including the date of the rendition of the bills forming the basis of this present claim. As hereinbefore indicated, the question in dispute between the parties is as to whether or not the plaintiff is entitled to be paid on the basis of the total cost (or estimated cost of the said projects) or upon the amount of money paid or to be paid by the city of Newark as its contribution towards said "total cost or estimated cost."

Without prejudice to either side, one-half of the bills rendered as aforesaid has been paid to the plaintiff, leaving due and unpaid at the time said bills, invoices or requisitions were rendered, for services as described in said bills, invoices or requisitions, without prejudice to any claim on the part of the plaintiff for any extra work, or for compensation because of delays in said work, the total sum of $8,847.46 as follows: Hayes Park West, $1,818.27; Hayes Park East, $2,835.39; Boylan street, $2,070.05; Clifton and Seventh avenues, $2,123.75.

The complaint as presently filed by the plaintiff, is for the said sum of $8,847.46.

The matter first came on to be heard by this court on the plaintiff's motion to strike the answer filed by the defendant on the ground that the said answer is frivolous and does not set forth a good defense to the cause of action as alleged in the complaint and for the entry of judgment for the plaintiff and against the defendant for the amount claimed in said complaint. On the date set for the argument of said motion to strike the answer as aforesaid, counsel representing the respective parties hereto, did in writing, stipulate that the said motion is considered by both parties as having been modified and changed so that the issues now joined by the com-

plaint and answer filed herein shall be considered by this court in the same way and manner as if the above case had been regularly noticed for trial and reached for trial in the regular manner. Said stipulation further provided that both parties waive trial by jury and that the affidavits filed by the plaintiff and the defendant on the motion to strike the answer shall be considered by the court together with the exhibits attached to such affidavits, as if the same had been produced as evidence at the trial of the case.

I have been attended by counsel representing the parties hereto and have carefully considered the arguments advanced by each of them.

After due deliberation and careful consideration of all matters, including the pleadings, affidavits, stipulations and arguments of counsel aforesaid, I am of the opinion that the plaintiff is entitled to the payment of the $8,847.46 as claimed in the complaint filed in this cause, together with lawful interest to be computed from June 21st, 1939, together with costs of suit to be taxed.