155 N.J. Super. 129 (1977)
382 A.2d 413
GARRET C. HOUMAN; LOCKWOOD BROTHERS, A PARTNERSHIP; POMPTON HILLS, A PARTNERSHIP; AND NATHAN BERNSTEIN, PLAINTIFFS,
v.
MAYOR AND COUNCIL OF THE BOROUGH OF POMPTON LAKES; JON SPINNAGER, MAYOR OF THE BOROUGH OF POMPTON LAKES; EUGENE DOCKERY, CLERK OF THE BOROUGH OF POMPTON LAKES; WILLIAM F. SCHNEIDER, TREASURER OF THE BOROUGH OF POMPTON LAKES; AND HERMAN W. STEINBERG, ESQ., DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
ARTHUR T. RIEDEL AND LAWRENCE T. ISENBERG, THIRD PARTY DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 12, 1977.
*137 Mr. Jerome A. Vogel for plaintiffs (Messrs Jeffer, Walter, Tierney, Hopkinson & Vogel, attorneys).
Mr. Herman W. Steinberg for defendants and third-party plaintiffs.
Mr. Samuel S. Nochimson for third-party defendant Riedel.
Mr. Frank Scangarella for third-party defendant Isenberg (Messrs. Scangarella & Feeney, attorneys).
MARTIN, J.S.C.
In order to resolve the numerous issues presented by this case, a rather detailed summary of its factual background is necessary.[1]
Plaintiffs are taxpayers and owners of certain real property in the Borough of Pompton Lakes. Sometime in the spring or early summer of 1976 plaintiffs, having received their tax bills and assessments for the year 1976, filed appeals from these assessments with the Passaic County Board of Taxation.
On August 24 the mayor and council received notice of the pending appeals from John Steinhauser, secretary of the board of assessors for the borough. It was common procedure for the borough attorney, Lawrence Isenberg, and the president of the board of assessors, Arthur Riedel, to represent the borough on property tax appeals to the county board of taxation.
Isenberg and Riedel, in their affidavits and testimony, assert that on September 2, 1976 they met with Steinhauser and local board member James McGrath for the purpose of discussing the pending tax appeals. Allegedly, it was agreed that due to various conflicts of interest, Isenberg would withdraw from the Lockwood appeal, leaving Riedel alone to represent the borough on this matter, and Riedel would withdraw *138 from the Bernstein and Houman appeals, leaving Isenberg as the sole representative of the borough in these two cases. It was also allegedly agreed that since the Bernstein appeal would have to be taken to the State Division of Tax Appeals, the borough would only make a pro forma presentation at the county level, purely for the purpose of protecting its right to appeal to the State. McGrath and Steinhauser deny that this meeting took place, that such an agreement was reached concerning representation for the borough, and that it was agreed the County appeal would not be fully and vigorously litigated in the Bernstein case.
Hearings before the Passaic County Board of Taxation were held on plaintiffs' appeals on October 1, 1976, at which time judgments were rendered in favor of plaintiffs reducing their assessments. At that hearing Riedel alleged that he withdrew from the Bernstein and Houman appeals, while Isenberg allegedly withdrew from the Lockwood appeal. Immediately following the hearings a report, which contained a description of the properties and the results of the county board's decisions to reduce the assessments, was forwarded by Isenberg to the borough board of assessors.
As a matter of routine, the borough clerk's office, on November 15, 1976, sent vouchers to those taxpayers whose assessments had been reduced in order to facilitate their requests for tax rebates.
On November 22, 1976 Isenberg forwarded a letter to the board of assessors recommending that of the three cases only the Bernstein case, where the county board had reduced the assessments by $81,000, should be appealed to the State Division of Tax Appeals. No appeal of the other reductions was recommended, even though the Lockwood assessment was reduced by about $63,000. The letter also requested, for the Bernstein appeal, information regarding the assessments for all other apartments in the borough, this information apparently not having been requested for the county hearing. The board's advice and recommendations *139 concerning appeals to the State was sought. Apparently, Isenberg never received a response to this letter.
Steinhauser received a complaint on or about November 20, 1976 concerning the manner in which the borough had been represented at the October 1 tax appeal hearing. The matter was brought to the attention of the mayor, who requested a written report from Steinhauser. In a letter dated December 2, 1976 Steinhauser described the alleged conduct of Isenberg and Riedel at the October 1 hearing and advised that the matter be investigated.
Mayor Spinnanger discussed the problem with Municipal Clerk Eugene Dockery and stated that he would recommend to the council the hiring of an outside attorney, Herman Steinberg, to represent the borough for the appeals. Between December 2 and December 8 Dockery discussed the matter with Steinberg, who recommended appeals to the State on all three cases and agreed to handle the matter, conditioned on the council's approval of his appointment.
At a regularly scheduled public meeting, held on December 8, 1976, council member Palatucci moved the following resolution, which had previously been included in the agenda posted in the municipal building several days prior to the meeting:
Be it resolved, pursuant to N.J.S.A. 10:4-13 and 10:4-12, that the Mayor and Council of the Borough of Pompton Lakes hold a closed session regarding personnel matters, and negotiations, following the public meeting on December 8, 1976. It is expected that the discussions undertaken in closed session will be made public at the next regular meeting, and at a public meeting early in 1977.
The resolution was adopted and the clerk read it to the public.
In the executive session Mayor Spinnanger announced that the three tax appeals, involving refunds of $8,700, would be taken; that Isenberg could not represent the borough on these appeals because of the conflict of interest involved, and therefore Steinberg would represent the borough in these matters, *140 the clerk to notify him in the morning. No formal resolution was adopted at this time, but it was stated that a resolution confirming the retention of Steinberg would be adopted upon receipt of a written opinion from Steinberg as to what action he recommended.
On December 9 the borough clerk revoked the rebate vouchers that had been returned by the three plaintiffs and instructed Steinberg to prepare and file the appeals. They were filed on December 14, the deadline being December 15.
On December 22, 1976 plaintiffs filed the present suit seeking, among other things, to have the appeals of the borough set aside, the appointment of Steinberg declared invalid, and payment by the borough of the amounts due plaintiffs as a result of the decisions by the county board of taxation.
The Mayor and council received the opinion prepared by attorney Steinberg on December 27, 1976. On the same day a special meeting of the council was announced for the purpose of adopting a formal resolution appointing Steinberg and authorizing the appeals to the State Division of Tax Appeals. Borough Clerk Dockery, in his affidavit and testimony, stated than on December 27 a notice of the special meeting was delivered to the mayor and members of the council by officers of the Pompton Lakes Police Department, and that at the outset of the meeting Mayor Spinnanger stated its purpose and that notice had been given to the public and others in accordance with the Sunshine Law. Myra Nell Cohen, a clerk in the office of the borough clerk stated in her affidavit that more than 48 hours before the December 29 meeting she informed five newspapers, including the Pompton Bulletin, of the purpose of the special meeting, and posted a public notice to the same effect in the municipal building.
At the December 29 special meeting Mayor Spinnanger stated the purpose of the special meeting was to consider adoption of a resolution naming an attorney to represent the Borough in six tax appeals to the State Division of Tax *141 Appeals, to defend the borough and its officials in any civil court action instituted against the borough or any of its officers concerning assessments or assessment appeals, and to represent the borough in a counterclaim and third-party complaint against the county board of taxation and to represent the borough in certain other legal matters.
The following resolution was adopted at the meeting:
Now, be it resolved by the Mayor and Council of the Borough of Pompton Lakes, in the County of Passaic, a Municipal Corporation of the State of New Jersey, that the appointment of Herman W. Steinberg to represent the Borough in the aforementioned appeals, and to file a written opinion with recommendations, is hereby confirmed and made a matter of public record as required by N.J.S.A. 10:4-12, 10:4-13, and 40A:11-5, and
Be it further resolved that Herman W. Steinberg be and is hereby authorized and directed to defend the Mayor and Council of the Borough of Pompton Lakes, the Mayor, the Clerk, the Treasurer and himself in a civil action filed on December 22, 1976, by Nathan Bernstein on behalf of Garret C. Houman, Lockwood Brothers, Pompton Hills and Nathan Bernstein, and to perform such incidental legal work as may be required in connection with the foregoing, and Be it further resolved that the Mayor and Clerk be and are hereby authorized and directed to sign an agreement with Herman W. Steinberg covering the aforementioned assignments; and
Be it further resolved that his contract is awarded without competitive bidding in accordance with N.J.S.A. 40A:11-5, and Be it further resolved that a copy of this resolution be published in the Bulletin, issue of December 30, 1976.
At the June 15, 1977 special meeting of the council the following resolution was adopted to correct an inadvertent omission from the minutes of the December 29, 1976 special meeting:
Now, be it resolved by the Mayor and Council of the Borough of Pompton Lakes, that the minutes of the special meeting of December 29, 1976, be corrected to read:
Mayor Spinnanger stated the meeting was being held in conformance with the Open Public Meetings Act, and the agenda had been telephoned to the Mayor and Council, Trends, Paterson News, Herald News, Today, and the Bulletin newspapers before 3:00 p.m. on Monday, December 27, 1976, and posted on the Municipal bulletin board. *142 The council also readopted the resolution appointing Steinberg at its August 3, 1977 special meeting.
On January 3, 1977, Steinberg filed an answer to plaintiffs' complaint and a third-party complaint against Riedel and Isenberg alleging that they both failed to notify the municipality of their various conflicts of interest, did not provide proper representation for the borough at the October 1, 1976 hearings of the county board of taxation, neglected to take affirmative steps to protect the borough's right to appeal the decision of the county board, and generally were derelict in their duties as representatives of the borough in these matters.
If the original plaintiffs are successful in obtaining the relief they seek, then the defendant, third-party plaintiff will be barred and estopped from proceeding with the appeals to the State. Therefore, third-party plaintiff seeks damages for loss of taxes, counsel fees and costs against the third-party defendants.[2] Third-party defendants have counterclaimed against third-party plaintiff for costs and counsel fees in this matter.
Plaintiffs claim is grounded on three theories: first, that the council failed to take formal action by way of resolution or motion, as required by common law; second, that the Municipal action was taken without calling for a public meeting and without notice to the public or providing the public with an agenda, all in violation of the Open Public Meetings Act, N.J.S.A. 10:4-6 et seq.; third, that the appointment of Steinberg was invalid for failure to comply with the provisions of N.J.S.A. 40A:11-5 which requires that a contract for professional services, which is awarded without public advertising and bidding, state supporting reasons, and *143 the text of the resolution be printed in the municipal legal advertiser.[3]
As a result of the council's alleged failure to comply with these requirements, plaintiffs assert that the council's decision at its December 8, 1976 executive session, to retain Steinberg for the purpose of appealing the judgment of the county board of taxation, was void ab initio and could not subsequently be ratified at the special December 29 session.
Both parties have raised a number of issues of first impression concerning the interpretation and application of this very important piece of legislation, the Open Public Meetings Act. While it is not necessary to consider and rule on all of these issues in order to make a final disposition of this case, the court feels compelled to do so in the interest of furthering the policies and objective of the act.
As to the common law requirement that the council act in a formal manner, Keyport Sewerage Auth. v. Granata, 52 N.J. Super. 76 (Law Div. 1958), states:
A body such as a borough council must act when assembled at stated or special meetings, and organize with a mayor to conduct and a clerk to record its proceedings. It can hardly act in any manner other than by ordinance or resolution or something equivalent thereto. Every act must be by a vote of the members present, and whether it is called an order, direction or motion, it still is a resolution because it must be resolved on upon a motion by some member. Town of Irvington v. Ollemar, 128 N.J. Eq. 402 (Ch. 1940), aff'd Irvington Nat. Bank v. Geiger, 131 N.J. Eq. 189 (E. & A. 1942). [at 83]
Cited with approval in Woodhull v. Manahan, 85 N.J. Super. 157, 164 (App. Div. 1964).
The court finds that the basic requirements of Keyport were met at the December 8 executive session. The minutes clearly show that the council members were assembled at an announced executive meeting, with the mayor conducting the *144 proceedings and the clerk recording them. The statement made by the mayor at the end of the executive meeting clearly evidences the fact that the council did discuss and resolve to take the three appeals and retain Steinberg to process them, the clerk being instructed to notify Steinberg of his appointment. From the mayor's December 2, 1976 statement to Dockery, and Dockery's own testimony, it is found that the mayor proposed this action be taken and that it was approved by a vote of the council. The fact that the mayor did not use any of the magic words  "order", "direction", "motion", or "resolution"  cannot negate the fact that the council obviously agreed to take the stated action. "Something equivalent" to a motion or order was approved at the December 8 executive session, with a formal resolution, confirming this earlier action, to be adopted following the filing of a letter opinion by attorney Steinberg reaffirming his earlier informal, oral opinion that all three cases should be appealed to the State. This court looks to substance and not form.
As to the first statutory requirement, N.J.S.A. 10:4-12(b) (7), (8) provides:
b. A public body may exclude the public only from that portion of a meeting at which the public body discusses:

* * * * * * * *
(7) any pending or anticipated litigation or contract negotiation other than in subsection b. (4) herein in which the public body is, or may become a party.
Any matters falling within the attorney-client privilege, to the extent that confidentiality is required in order for the attorney to exercise his ethical duties as a lawyer.
(8) Any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of the performance of, promotion or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the public body, unless all the individual employees or appointees whose rights could be adversely affected request in writing that such matter or matters be discussed at a public meeting.
In the absence of an explicit indication of a special meaning, words in a statute are to be given their common *145 usage. Ford Motor Co. v. N.J. Dep't of Labor and Industry, 5 N.J. 494 (1950). The term "litigation" has a broad significance in common usage. It is defined thus: "Act or process of litigating, a suit at law; a judicial contest; also figuratively, (a) dispute; discussion." Websters New International Dictionary (2 ed); City Affairs Comm. v. Jersey City, 134 N.J.L. 180, 184 (E. & A. 1946). The word "litigation" in 38 C.J.S. 68 is defined: "A contest in a court of justice, for the purpose of enforcing a right; a judicial contest, a judicial controversy; a suit of law." In re Loudenslager Estate, 113 N.J. Eq. 418, 420 (1933). The State Division of Tax Appeals is a statutory tribunal which performs the quasi-judicial function of determining, de novo, the full and fair value of property. Gibraltar Corrugated Paper Co. v. North Bergen Tp., 20 N.J. 213 (1955); Rek Investment Co. v. Newark, 80 N.J. Super. 552 (App. Div. 1963).
It is the council's consideration of litigability which may be conducted in a private session under N.J.S.A. 10:4-12(b) (7). Accardi v. North Wildwood Mayor and Council, 145 N.J. Super. 532 (Law Div. 1976).
To invoke this exception, the subject under discussion must be the `pending or anticipated litigation' itself, i.e., the public body must be discussing its strategy in the litigation, the position it will take, the strengths and weaknesses of that position with respect to the litigation, possible settlements of the litigation or some other facet of the litigation itself. [Attorney General's Formal Opinion 30-1976, 100 N.J.L.J. 31]
The discussion by the council of its anticipated litigation before the State Division of Tax Appeals was, therefore, within the exception for closed session, as provided by N.J.S.A. 10:4-12(b) (7).
The discussion of whether to employ Steinberg as borough attorney for the purpose of processing these appeals was clearly within the ambit of N.J.S.A. 10:4-12 (b) (8) since this provision encompasses "any matter" involving the employment or appointment of an employee. The question of individual privacy would have arisen during these discussions *146 of attorney Steinberg's qualifications, just as if he was being personally interviewed during the meeting. Jones v. East Windsor Regional Bd. of Ed., 143 N.J. Super. 182 (Law Div. 1976).
Concerning the second statutory requirement, N.J.S.A. 10:4-13 provides in part:
No public body shall exclude the public from any meeting to discuss any matter described in subsection 7b. until the public body shall first adopt a resolution, at a meeting to which the public shall be admitted. * * *.
The Attorney General's Formal Opinion 29-1976 states that
In general, the Open Meetings Act requires that all meetings of public bodies shall be open to the public at all times. N.J.S.A. 10:4-12. The Act, however, does permit a public body to exclude the public from that portion of a meeting at which it discusses any of the items listed in subsection b of N.J.S.A. 10:4-12. Before excluding the public, however, section 10:4-13 of the Act requires the public body to first pass a resolution at a public meeting. Since this provision requires a resolution to be passed "at a meeting to which the public shall be admitted" and the Act prohibits a public body from holding a meeting "unless adequate notice thereof has been provided", N.J.S.A. 10:4-9, the resolution for going into closed session must be passed at a meeting for which adequate notice has been provided.
Accordingly, it is our judgment that the probable legislative purpose underlying the enactment of these provisions was to allow a public body to hold a meeting limited to the items to be discussed in closed session without the need for `adequate notice' only if the public body has already passed a resolution required by section 10:4-13 at a prior meeting for which adequate notice was given.
"Adequate notice" [is] provided by placing the time, date and location of a meeting in the annual schedule of regular meetings promulgated in accordance with section 10:4-18 of the Act. Providing notice in this fashion complies with the "adequate notice" requirement since the definition of "adequate notice" specifically states that "(W)here annual notice or revisions thereof in compliance with section 13 (N.J.S.A. 10:4-18) of this Act sets forth the location of any meeting, no further notice shall be required for such meeting." N.J.S.A. 10:4-8(d).
N.J.S.A. 10:4-18 states in part:

*147 At least once a year * * * by not later than January 10 of such year, every public body shall post and maintain posted throughout the year in the place described in subsection 3.d.(1), mail to the newspapers described in subsection 3.d.(2), submit to the persons described in subsection 3.d.(3), for the purpose of public inspection a schedule of the regular meetings of the public body to be held during the succeeding year. Such schedule shall contain the location of each meeting to the extent it is known, and the time and date of each meeting.
The court finds that the December 8, 1976 session of the council was a regularly scheduled meeting for which adequate notice had been given pursuant to N.J.S.A. 10:4-18. On January 7, 1976, the council had adopted a resolution:
1. That the regular meetings of the Mayor and Council of the Borough of Pompton Lakes heretofore established as the first and third Wednesdays of each month shall be held on the second and fourth Wednesdays of each month commencing with the month of February.
2. All of said meetings shall be held in the Council chambers, Municipal Building, Lenox Avenue, Pompton Lakes, New Jersey.
3. The clerk shall mail to each of the newspapers and such other persons as are entitled to said notice, a schedule of the regular meetings of the Mayor and Council as heretofore set forth and shall further post and maintain posted throughout the year said schedule in accordance with the law.
4. That the Pompton Lakes Bulletin, the official newspaper of the municipality, and the Paterson News, Passaic Herald News, Trends and Today newspapers circulating within the Borough of Pompton Lakes and having the greatest likelihood of informing the public within the Borough of Pompton Lakes of the meetings of the mayor and council are hereby designated to receive notification required pursuant to the Open Public Meetings Act.
The resolution further stated that a copy of such notices would be mailed to any citizen who requested them and payed the appropriate fee.
Lawrence Isenberg stated in his affidavit that
On December 8, 1976, at 8:00 o'clock p.m. the mayor and council of the Borough of Pompton Lakes held a regularly scheduled meeting pursuant to the Open Public Meetings Act. Notice of the meeting *148 was included in the annual notice of all regular meetings of the mayor and council for the year 1976, which notice had been duly given to newspapers designed by resolution of the council adopted January 7, 1976, and delivered pursuant to a resolution of the council also adopted on January 7, 1976.
In addition, the exhibits submitted reveal that all notices clearly stated meetings were to commence at 8 P.M. Therefore, the notice requirement for an executive session (N.J.S.A. 10:4-13) was complied with to the extent that the resolution was passed at a prior regularly scheduled public meeting for which adequate notice was given, pursuant to N.J.S.A. 10:4-18.
N.J.S.A. 10:4-13 also provides that the resolution must contain a statement:
a. Stating the general nature of the subject to be discussed, and b. stating as precisely as possible, the time when and the circumstances under which the discussion conducted in closed session of the public body can be disclosed to the public.
In discussing this provision, the statement attached to Assembly Bill 1030 states that:
Section 8 requires that whenever a public body seeks to meet in private, it must first pass a resolution at a public meeting stating its intention to do so. The resolution must also state the general nature of the matters to be discussed and approximately when, if ever, the matters discussed can be made public.
The Legislature had declared that it is the public policy of this State to insure
* * * the right of the public to be present at all meetings of public bodies, and to witness in full detail all phases of the deliberation, policy formulation, and decision making of public bodies, ... and the right to attend all meetings of public bodies at which any business affecting the public is discussed or acted upon in any way except only in those circumstances where otherwise the public interest would be clearly endangered or the personal privacy or guaranteed rights of individuals would be clearly in danger of unwarranted invasion.
*149 The Legislature further declares it to be the public policy of this State to insure that the aforesaid rights are implemented pursuant to the provisions of this Act so that no confusions, misconstructions or misinterpretations may thwart the purposes thereof. [N.J.S.A. 10:4-7]
Further, N.J.S.A. 10:4-21 provides that
This act shall be liberally construed in order to accomplish its purpose and the public policy of this State as set forth in section 2. (N.J.S.A. 10:4-7)
There is a presumption that the word "shall" is statutorily used in the imperative, and since adoption of a resolution prior to an executive session is the essence of what is required by N.J.S.A. 10:4-13, it is mandatory. Keyport Sewerage Auth. v. Granata, supra.
It is obvious that the provisions of N.J.S.A. 10:4-13 are an effort to establish a compromise in those areas where public observance and attendance would actually be contrary to the public interest. A public body may exclude the public from the discussion of those subjects listed in N.J.S.A. 10:4-12, provided that prior to the closed meeting it discloses to the public the general nature of the subjects to be considered and the time and circumstances under which these discussions will ultimately be disclosed.
The resolution adopted by the council prior to the executive session simply stated:
Be it resolved, pursuant to N.J.S.A. 10:4-13 and 10:4-12, that the mayor and council of the Borough of Pompton Lakes hold a closed session regarding personnel matters, and negotiations, following the public meeting on December 8, 1976. It is expected that the discussions undertaken in closed session will be made public at the next regular meeting, and at a public meeting early in 1977.
Since N.J.S.A. 10:4-13 only requires the resolution to state "the general nature of the subject to be discussed," the statement that personnel matters would be considered, without specific disclosure that the personnel question *150 involved the retention of legal counsel, is arguably sufficient. However, the resolution made no mention of the fact that the closed meeting would also involve the discussion of whether, in the first instance, to pursue the appeals. Therefore, this resolution is not in conformity with the mandatory requirements of N.J.S.A. 10:4-13.
Plaintiffs' counsel argues that the borough violated the act by failing to provide an agenda for its December 8, 1976, meeting. The Attorney General's Formal Opinion No. 29-1976 states that N.J.S.A. 10:4-8(d) defines "adequate notice" as including:
Written advance notice of at least 48 hours, giving the time, date, location and, to the extent known, the agenda of any regular, special or rescheduled meeting * * *. [Emphasis supplied]
Nevertheless, if a public body had, in conformity with N.J.S.A. 10:4-18, published an annual schedule of the time, dates and locations of regular meetings, it is not required by the act to additionally publish an agenda for such meetings.
Clerk Dockery stated in his testimony that an agenda for the December 8, 1976 meeting was posted in the Municipal Building and telephoned to the appropriate newspapers. The agenda contained the resolution concerning the holding of a closed session regarding personnel matters following the public meeting. However, the agenda did not state that the Council would discuss and decide whether to take certain tax appeals to the State and retain outside counsel for that purpose. Therefore, it was defective.
To summarize, this court finds that (1) the council could at an executive session discuss whether to take the tax appeals and retain outside counsel for that purpose; (2) the counsel did, in fact, take such formal action at its December 8 executive meeting; (3) the notice requirement for the executive session (N.J.S.A. 10:4-13) was complied with, to the extent that the resolution was passed at a prior regularly *151 scheduled public meeting for which adequate notice was given pursuant to N.J.S.A. 10:4-18; (4) however, the resolution was defective for failing to comply with the disclosure requirements of N.J.S.A. 10:4-13(a) and (b); (5) in addition, the agenda voluntarily published for the regular meeting was incomplete in that it failed to disclose adequately what matters would be considered in the executive session, thereby violating the spirit and policy of the Open Public Meetings Act. While these violations of the act are considerable, the more important question arises as to whether the council could decide what action to take  that is, actually vote  on these issues in closed session.
N.J.S.A. 10:4-12(b) provides that a public body may exclude the public only from a meeting where it discusses any of the enumerated subjects. N.J.S.A. 10:4-13 also uses the words "discuss" and "discussion." Since the act contains no specific definition of the word "discuss," the court will apply its commonly accepted meaning. Ford Motor Co. v. Dep't of Labor and Industry, supra. Webster's New International Dictionary (2 ed.) defines "discuss" as: "to argue by presenting the various sides of a question, to debate fully and openly: as measures discussed by the cabinet." However, Webster's New Word Dictionary of the American Language defines "discuss" as being synonymous with "talking about something in a deliberative fashion, with varying opinions offered constructively and usually, amicably, so as to settle an issue, decide on a course of action, etc." Therefore, an ambiguity exists in the statutory language as to whether the Legislature intended the word "discuss" to mean that a public body could only debate on an issue in closed session or could also, in private, decide on a course of action.
Where statutory words are ambiguous or uncertain, the court may engage in statutory interpretation and utilize extrinsic aids, such as Legislative history, in order to ascertain the Legislature's intended meaning of the language used. Fisher v. Union Tp. Bd. of Ed., 94 N.J. Super. *152 359 (Ch. Div. 1967), aff'd 99 N.J. Super. 18 (App. Div. 1968); Catholic Charities of Diocese of Camden v. Pleasantville, 109 N.J. Super. 475 (App. Div. 1970); Murphy v. Zink, 136 N.J.L. 235 (Sup. Ct. 1947), aff'd 136 N.J.L. 635 (E. & A. 1948); McFadden v. Pennsylvania R.R. Co., 130 N.J.L. 601. Where the statute is ambiguous the court may resort to the principle that the spirit of the law controls the letter. Mulligan v. New Brunswick, 83 N.J. Super. 185 (Law Div. 1964); Giordano v. Newark City Commission, 2 N.J. 585 (1949). If statutory expression is susceptible of two meanings, that meaning will be adopted which comports with the general public policy of the State as manifested by its legislation rather than that which runs counter to such policy. Civil Service Dep't. v. Clark, 15 N.J. 334 (1954); Modern Indust. Bank v. Taub, 134 N.J.L. 260 (E. & A. 1946). Indeed, legislation must be accorded a rational interpretation consistent with its manifest purpose. Albert F. Ruehl Co. v. Board of Trustees of Schools for Indust. Ed., 85 N.J. Super. 4 (Law Div. 1964); State v. Link, 14 N.J. 446 (1954). Particular words of a statute are to be made responsive to the reason and spirit of the entire enactment. Sperry & Hutchinson Co. v. Margetts, 15 N.J. 203 (1954); State v. Weissman, 73 N.J. Super. 274 (App. Div. 1962). The intent of the Legislature is to be gathered from the object and nature of the subject matter, the contextual setting, the mischief felt and the remedy in view. San-Lan Builders, Inc. v. Baxendale, 28 N.J. 148. State Bd. of Medical Examiners v. Warren Hospital, 102 N.J. Super. 407 (Cty. Ct. 1968), aff'd 104 N.J. Super. 409 (App. Div. 1969). A statute should not be construed to permit its purpose to be defeated by evasion. In order to determine whether there has been an evasion, the statute must be investigated with respect to its purpose and the practical results flowing from its enforcement. Grogan v. De Sapio, 11 N.J. 308 (1953).
Prior to adoption of the act the Legislature deleted the following definitions:
*153 d. "Act upon or discuss" means and includes the discussion and voting upon motions, resolutions, rules, regulations, policies, ordinances and statutes; discussion as to whether or not any of the same shall be adopted or acted upon or placed on the agenda of the public body for present or future action; discussion or action pertaining to the procedures to be followed by the public body in conducting any meeting, or any hearing it may hold or propose to hold, or the procedure to be followed by it with respect to any matter coming before it; discussions which related in any way to the taking or not taking of any action by the public body or any of its agents, employees, committees or agencies; and discussions or actions which relate in any way to the governmental functions for which the public body was established.
Although this definition was deleted from the act, it clearly indicates that the Legislature did not consider the word "discuss" to be synonymous with deciding a course of action.
The statement which accompanies Assembly Bill No. 1030, adopted February 25, states, in part:
Section 7 provides that a public body may limit public participation in its meetings. In addition, specific topics which a public body may be permitted to discuss in private are listed. Private deliberation is permitted in cases where the public interest would otherwise be endangered or the personal privacy or guaranteed rights of individuals would be in danger of unwarranted invasion. Public bodies may meet in closed session when the matters under discussion [fall within one of the nine enumerated topics].
The statement does not say that a public body may "act" in private. Only "private deliberation is permitted," "deliberation" being defined as "the act of deliberating: a discussion and consideration by a group of persons of the reasons for and against a measure." Webster's New Collegiate Dictionary.
A pamphlet prepared by the State, Guidelines on the Open Public Meetings Law, contains the following passage:
VI Executive or Closed Sessions (§ 7)
May a public body hold a closed session to discuss a matter before it votes on it?
Answer: Generally, no. A public body may hold a closed session to discuss a matter only if that matter falls within one of the exceptions *154 of the public meetings requirement contained in the law and only if the procedure set forth in the law for the holding of closed sessions is following. If the matter to be discussed does not fall within one of the stated exceptions, then even if the matter is sensitive or controversial, both the discussion and any voting must take place in public. [at 12]
New Jersey Right to Know: A Report on Open Government states that:
It is the purpose of the following set of recommendations and of the legislation contained in this report to establish a firm and general philosophy of maximum possible disclosure of government information unless such information is otherwise exempt clearly under law. At the same time that a broad philosophy of disclosure of information is being enacted into law, it is necessary to protect certain equally important rights such as citizen's rights of privacy and a governments right to function. [at 3]
In discussing executive sessions, the report recommended that
The better approach may be to specifically enumerate those matters which may be deliberated in closed session. The same considerations that would justify discussing and deliberating these matters in closed session, however, would not necessarily also justify the taking of final action at such sessions. Instead, there exist extremely few reasons for requiring a vote to be taken in executive session on the enumerated matters. Therefore, the policy should be adopted that, although these matters may be deliberated in closed session, no final action, i.e., no determination made by vote, shall be taken in such session unless it is found that taking the final action in public would materially prejudice the accomplishment of the desired objective. [at 202]
In Woodcock v. Calabrese, 148 N.J. Super. 526 (Cty. Ct. 1977), the court, in interpreting N.J.S.A. 10:4-12, made the following observations:
The intent of the statute is to allow officials to meet privately with counselors and advisors in order to discuss policy, formulate plans of action and generally to have an exchange of ideas. Illustrative of this exemption would be a mayor meeting with department heads or advisory boards. This rationale applies to the present situation where the mayor and council intended to meet and discuss informally *155 an emergent situation and be informed by an advisory board, here the rent leveling board. There is an obvious need for municipal officials to receive information from duly constituted advisory officials or bodies. The Legislature has recognized a methodology whereby governing officials may be provided such information. [at 535]
In addition, it should be noted that in Accardi v. North Wildwood Mayor and Council, supra, the court stated that any exception should be strictly construed to prevent frustrating the broad policy of public observation and attendance at all phases of municipal decision making.
A statute is to be construed in light of the law which it replaces. Fort Lee v. U.S. ex rel. Barker, 104 F.2d 275 (3 Cir.1939).
The purpose of the Right to Know Law, N.J.S.A. 10:4-1 et seq., the predecessor to the Open Public Meetings Act, was to admit the public only to meetings of a public body where "official action" was taken  that is, determinations made by vote-taking. N.J.S.A. 10:4-2 and N.J.S.A. 10:4-3. Thus, a distinction was made between meetings where final votes were taken and those where only preliminary discussion or evaluation occurred. The public being admitted only to the former. In addition, N.J.S.A. 10:4-4 enumerated certain instances where the public could be excluded from observing even the vote taking. The limitations of this law were severely criticized by the Report on Open Government, at 14 and 181. The Open Public Meetings Act was enacted to expand public access to all stages of the decision-making process, including discussions prior to formal voting. If the Legislature had intended to retain any of the limitations imposed by the preceding legislation, it could have easily incorporated the phrase "official action" into N.J.S.A. 10:4-12(b). Instead the Legislature merely provided that the public could be excluded when a public body "discusses" any of the enumerated topics. This legislative history, when considered in conjunction with the deleted definition of "act upon or discuss," clearly evidences *156 that the Legislature distinguished between meetings where final votes are taken and those where only preliminary discussions occur, and did not intend, by the use of the word "discuss," to incorporate into N.J.S.A. 10:4-12(b) the limitation on public access to governmental vote taking contained in N.J.S.A. 10:4-4.
The predecessor law, N.J.S.A. 10:4-9(b) (2), stated that in an emergency situation a public body may meet without giving adequate notice, provided that, among other requirements, "the meeting is limited to discussion of and acting with respect to such matters of urgency and importance * * *" (Emphasis supplied). The failure of the Legislature to use the phrase, "and acting with respect to," or some equivalent language, in N.J.S.A. 10:4-12 is an additional indication that a public body cannot take official action in an executive session.
It must be recognized, however, that there is some evidence to indicate a contrary intent. For one, N.J.S.A. 10:4-7 declares that it is the public policy of this State to insure the public's right
* * * attend all meetings of public bodies at which any business affecting the public is discussed or acted upon in any way except only in those circumstances where otherwise the public interest would be clearly endangered or the personal privacy or guaranteed rights of individuals would be clearly in danger of unwarranted invasion.
This provision might be interpreted as authorizing exclusion of the public from meetings where governmental business is discussed or acted upon, when the stated circumstances exist. However, in view of the substantial evidence to the contrary, and the lack of clarity in this provision, the court discounts this possible interpretation as unpersuasive.
In addition, the New Jersey Department of State pamphlet, Guidelines on the Open Public Meetings Law, § VI, "Executive or Closed Sessions," contain the following passages: *157 What are the exceptions to the requirement that a public body hold its meetings in public?
Answer: The law allows, but does not require, a public body to hold a closed session to discuss or act upon any of the following:

[nine enumerated topics]
May matters other than those listed above be discussed or acted upon by a public body in closed session?
Answer: No. Only the 12 types of matters listed above may be discussed or acted upon in closed session. Since everything else must be discussed or acted upon in public, it is advisable for public bodies to group their agenda items in two parts; one to be discussed in public, the other to be discussed in closed session. [at 12-13]
Considering the Legislature's use only of the word "discuss" in N.J.S.A. 10:4-12 and the court's determination of the intended meaning of this word, the Department of State's interpretation that this provision allows a closed session to "discuss or act upon" certain matters is incorrect and will not be followed by this court.
The court's interpretation of the statutory language is in accord with the spirit and policy of the act. The discussion of the pros and cons of whether to take these appeals and retain Steinberg as borough attorney had to be conducted in private, in order to protect the privacy and professional integrity of the prospective employee and the position of the borough as a potential litigant. Thus, such private discussions were in the public interest, for without them the borough would have been severely hampered in performing these necessary governmental functions. However, in order to protect these same interests, it was not necessary that the final decision be made in closed session. Public observance of the actual vote on whether to take the proposed action would not adversely affect the privacy and professional integrity of Attorney Steinberg, the effective functioning of the borough council, or the position of the borough as a potential litigant. To hold otherwise would be contrary to the act's broad policy of maximum possible observance by the public of all phases of governmental decision-making, except where it would clearly be contrary to the public interest or personal rights of individual citizens.
*158 In addition, observance of how public bodies act on an issue of particular concern to the community is essential for accountability of elected officials. The statement attached to Assembly Bill 1030 states that
If the public and the press cannot attend, they cannot learn of many positions that are considered or taken at such meetings by individual officials serving the public. Lack of this information can lessen public confidence in governmental decisions and impair the public's function of holding officials accountable in a democracy.
Therefore, this court finds that the borough council violated the Open Public Meetings Act when, at its December 8, 1976 meeting, it took formal action on the above-mentioned proposals in closed session. The court must now determine what affect this violation, and the others previously discussed, had on the validity of the council's actions.
Under N.J.S.A. 54:3-21, appeals by taxpayers and taxing districts, and N.J.S.A. 54:2-39, appeal from judgment of county board, the borough unquestionably had the statutory authority to appeal the decision of the county board of taxation to the State Division of Tax Appeals and to appoint legal counsel to represent it in these appeals. N.J.S.A. 40A:11-1 et seq. The borough's actions would be void  that is, of no validity or effect, a complete nullity. Jersey City v. Davis, 80 N.J.L. 609 (Sup. Ct. 1910); Sparks v. U.S., 153 F. Supp. 909 (D. Vt. 1957), only if it had acted ultra vires, that is, entirely beyond the scope of its municipal power and authority to act. Spiro Drug Service Ins. v. Union City Bd. of Comm'rs., 130 N.J.L. 1 (Sup. Ct. 1943); Hunter v. Teaneck Tp., 128 N.J.L. 164 (Sup. Ct. 1942). Having previously determined that the borough did comply with the Keyport requirement of formal action, this court finds that the original action of the borough was not void ab initio, as argued by plaintiffs' counsel.
N.J.S.A. 10:4-15(a) clearly states that
Any action taken by a public body at a meeting which does not conform with the provisions of this Act shall be voidable in a proceeding *159 in lieu of prerogative writ in the Superior Court, which proceeding may be brought by any person within 45 days after the action sought to be voided has been made public.
A voidable act is one which may be avoided, but until this is done, in the regular course of judicial proceedings, the action stands in full force and effect. Inskeep v. Lecony, 1 N.J.L. 111 (Sup. Ct. 1791). That which is voidable operates to accomplish the objective sought, until the defect has been judicially ascertained and declared. City of Marion v. Sickles, 105 Ohio App. 495, 152 N.E.2d 813 (1957). Therefore, this court finds that, even with the failure to comply with the procedural requirement of the Open Public Meetings Act, the original action of the borough at its December 8, 1976 meeting was, in the first instance, effective to accomplish the Council's objective of authorizing Steinberg to act as borough attorney for the purpose of proceeding with the tax appeals to the State. Thus, on December 14 Steinberg did have the initial authority to file the appeals for the borough. The question now is whether, subsequent to the filing of plaintiffs' complaint, the borough could, at its December 29, 1976 special session, ratify its voidable action of December 8.
The general rule of ratification of prior acts is stated in 4 Mc Quillin, Municipal Corporation, § 13.47 at 563:
Generally, a governmental body may effectively ratify what it could theretofore have lawfully authorized. Ratification after the Act is said to be as potent as authority before the Act. Irregular and void (voidable) acts may be ratified or confirmed at a subsequent meeting, provided it is a valid or legal meeting. [Citations omitted]
Whatever a public body may authorize, it may subsequently ratify, and such ratification, being equivalent to an original grant of power, is operative and relates back to the date of the original action which is subsequently being ratified. McKenzie v. Mukilteo Water Dist., 4 Wash.2d 103, 102 P.2d *160 251 (1940); Fulton Cty. Fiscal Court v. Southern Bell Tel. & Tel. Co., 289 Ky. 159, 158 S.W.2d 437 (1942). Ratification is equivalent to previous authorization and relates back to the time when the Act ratified was done. 75 C.J.S., Ratification, at 608. A ratification is, in its effect upon the act of an agent, equivalent to the possession by the agent of a previous authority and operates upon the act ratified in the same manner as though the authority of the agent to do the act existed originally. Marsh v. Fulton Cty., 10 Wall 676, 77 U.S. 676, 19 L.Ed. 1040 (1871).
These basic principles of ratification have been applied by the New Jersey courts, which have consistently held that where a public body has the power and authority to enter into an agreement, but has failed to follow proper procedures in exercising that authority, it may subsequently ratify the agreement. Johnson v. Hospital Service Plan, 25 N.J. 134 (1957); DeMuro v. Martini, 1 N.J. 516 (1949); City Affairs Comm. v. Bd. of Comm'rs, 134 N.J.L. 180 (E. & A. 1946); Riddlestorffer v. Rahway, 82 N.J. Super. 36 (Law Div. 1963). These decisions draw a distinction between agreements that are ultra vires in the primary sense, being entirely beyond the scope of municipal authority, and those which are ultra vires in the secondary sense, being deficient for failure to proceed in a proper manner. Those agreements which are merely ultra vires in the secondary sense may be subsequently ratified by the municipality. Although all of these cases involve governmental ratification of contracts, the court is satisfied that these generally applicable principles of ratification should be applied to other types of governmental action, such as the decision to proceed with the tax appeals.
As to the employment of Attorney Steinberg, there are a number of cases which have held that a governmental body may subsequently ratify the employment of a specialist when it failed to follow proper procedures in exercising its authority to initially retain such assistance. Stout v. Bayonne, *161 15 N.J. Misc. 672, 674-675 (Sup. Ct. 1937), aff'd 120 N.J.L. 242 (E. & A. 1938); Frank Grad & Sons, Inc., v. Newark, 17 N.J. Misc. 354, 364-365 (Cir. Ct. 1939); State ex rel. Salmon v. Haynes, 50 N.J.L. 97, 100-101 (Sup. Ct. 1887).
Plaintiffs claim that a ratification could not be effective in this case because the right of third parties have intervened between the borough's original action and its later ratification. The retroactive efficacy of a ratification is subject to the intervening rights of third persons, which rights cannot be defeated by a subsequent ratification. Platt v. Schmitt, 117 Wis. 489, 94 N.W. 345 (1903); Cook v. Tullis, 18 Wall. 332, 85 U.S. 332, 21 L.Ed. 933 (1874); Petray v. First National Bank, 92 Cal. App. 86, 267 P. 711 (1928); McKenzie v. Mukilteo Water Dist., supra. Plaintiffs' counsel never elaborated on this bare assertion and the court does not find that any intervening third-party rights would be defeated by a subsequent ratification. Plaintiffs' rights to tax rebates were, up to December 15, 1976, subject to the borough's rights to dishonor the rebate vouchers and file an appeal to the State.
Having determined that the borough had a common law right to ratify its procedurally defective acts of December 8, 1976, the court must now determine the effect of the Open Public Meetings Act on this right. A statute often speaks as plainly by inference as by expressed words, and the details for the accomplishment of a statutory objective do not have to be specifically spelled out with particularity. Lomarch Corp. v. Englewood Mayor and Common Council, 51 N.J. 108 (1968); Dvorkin v. Dover Tp., 29 N.J. 303 (1959); State v. Gill, 89 N.J. Super. 104 (App. Div. 1965), aff'd 47 N.J. 441 (1966). Statutes are to be construed in reference to principles of the common law, and where a statute directs that something may be done, but does not provide a particular manner, it shall be done according to the common law. Fivehouse v. Passaic Valley Water Comm'n, 127 N.J. Super. 451 (App. Div. 1974); Wayne *162 Tp. v. Ricmin, Inc., 124 N.J. Super. 509 (App. Div. 1973); Raritan Water Power Co. v. Veghte, 21 N.J. Eq. 463 (E. & A. 1869); Welsh v. Blackwell, 14 N.J.L. 344 (Sup. Ct. 1834). In the construction of a statute, the court is to assume that the Legislature acted with knowledge of the common law. Ross v. Miller, 115 N.J.L. 61 (Sup. Ct. 1935); Magierowski v. Buckley, 39 N.J. Super. 534 (App. Div. 1956); St. Cassian's Catholic Church v. Allen, 77 N.J. Super. 99 (Law Div. 1962), rev. 40 N.J. 46 (1963). From these principles of statutory construction it logically follows that the Legislature must clearly and plainly express its intent that common law principles are not applicable to actions taken pursuant to a statutory grant of authority. Cf. Blackman v. Iles, 4 N.J. 82 (1950); Wayne Tp. v. Ricmin, Inc., supra; Fivehouse v. Passaic Valley Water Comm'n, supra.
The Open Public Meetings Act specifically provides a procedure by which a public body may subsequently rectify any action which would otherwise be voidable for failure to comply with the requirements of the act. N.J.S.A. 10:4-15(a) provides that
Any action taken by a public body at a meeting which does not conform with the provisions of this act shall be voidable in a proceeding in lieu of prerogative writ in the Superior Court, which proceeding may be brought by any person within 45 days after the action sought to be voided has been made public; provided, however, that a public body may take corrective or remedial action by acting de novo at a public meeting held in conformity with this Act and other applicable law regarding any action which may otherwise be voidable pursuant to this section. * * *
The purpose of the act is to insure the public's right to observe all phases of the governmental decision-making process. However, this section evidences the Legislature's understanding that noncompliance with the act is not always purposefully designed to deny this right to the public, and that disruption of the orderly process of government would often *163 follow a belated realization that a public body had, inadvertently, failed to act in compliance with the law. It should be noted that the predecessor Right to Know Law, N.J.S.A. 10:4-1 et seq., did not contain a remedial provision. Therefore, it may be assumed that, in order to protect the equally important need of government to function effectively, the Legislature provided this remedial procedure whereby a public body may correct earlier statutory violations by subsequent action. The statement attached to Assembly Bill 1030 states that, "A public body may correct an action which does not comply with this Act by acting anew at any time at a public meeting that does comply with this Act." Thus, where the decision-making process is repeated in compliance with the act, the objective of public observance is fulfilled and, as long as that subsequent action is retroactive in effect, governmental order is insured.
It is assumed that by use of the phrase that a public body may take corrective or remedial action, N.J.S.A. 10:4-15(a), the Legislature understood, and by inference expressed its intent, that common law principles of ratification would apply to any remedial action taken pursuant to this provision. This presumption is reinforced by the fact that the Legislature did not specifically provide that such remedial actions would have an effect other than that found in the common law. The borough's December 29, 1976 reaffirmance of Steinberg's authority to proceed with the appeals would have to be retroactively effective to its initial December 8 action; otherwise Steinberg would not have had the authority to file the appeals on December 14. To hold, as plaintiffs contend, that the council's subsequent action was effective only as of its date, and did not, in the manner of a ratification, relate back to its earlier action, would ignore the statutory words "corrective or remedial," for then the effect of the borough's prior failure to comply with the act would not be cured. A statute is ordinarily to be interpreted so as to give full force and effect to every word. *164 110-112 Van Wagenen Ave. Co. v. Julian, 101 N.J. Super. 230 (App. Div. 1968); U.S. v. Johnson, 462 F.2d 423 (3 Cir.1972).
Plaintiffs' counsel argues that since any corrective or remedial action can only be taken de novo, such action would only be effective as of December 29, 1976. However, the court finds that the word "de novo", in the context of this statute, simply means to consider anew, or afresh, for a second time. Wilson v. Morris, 369 S.W.2d 402 (Mo. 1963). By use of this word the Legislature merely intended that a public body, in order to remedy an otherwise voidable prior act, must reconsider its action completely anew, for a second time, in full compliance with all the requirements of the Open Public Meetings Act and any other applicable statutes. This interpretation is supported by the statement attached to Assembly Bill 1030, which states that "a public body may correct any action which does not comply with this Act by acting anew at any time at a public meeting that does comply with the Act."
Plaintiffs' counsel cites the case of Kramer v. Sea Girt Bd. of Adj., 80 N.J. Super. 454 (Law Div. 1963), where the board of adjustment voted in a private, executive session to recommend the granting of a variance. The court held the resolution invalid; notwithstanding that a "formal rerun" of the board's vote was taken publicly four months later. The court stated that if it
* * * were to permit the actions of the board to stand, it would be tantamount to an express sanction to circumvent the requirements of N.J.S.A. 10:4-1 et seq. Every commission, board and public authority would then be invited to vote in executive session and take the risk that the proceeding would go unchallenged. And if challenged on appeal, the administrative tribunal simply could meet the objection by hastily revoting at a public meeting. Clearly, such a procedure, even if taken in good faith, cannot be condoned. [at 464]
This case, and the others cited by plaintiffs' counsel, are inapplicable since they were decided under the predecessor law which did not provide a remedial procedure.
*165 The court finds that the borough could, pursuant to N.J.S.A. 10:4-15, retroactively ratify its action of December 8, 1976 at its special meeting of December 29, 1976, provided that meeting fulfilled all the requirements of the act. Therefore, the court must now examine the council actions prior to and during that special meeting.
Under N.J.S.A. 10:4-8 the borough must give written advance notice at least 48 hours prior to the special meeting, such notice to contain the time, date and location of the meeting, the agenda to the extent known, and a statement of whether formal action will be taken. This notice must be (1) prominently posted in one public place reserved for announcements of this type; (2) transmitted to at least two newspapers that have the greatest likelihood of informing the public of such meetings, including the official newspaper designated by the borough; (3) filed with the clerk of the municipality involved. In addition, under N.J.S.A. 10:4-10, the mayor, as the person presiding, must announce publicly and enter into the minutes of the meeting an accurate statement that adequate notice of the meeting has been provided, specifying the time, place and manner in which such notice was given. N.J.S.A. 10:4-11, by inference at least, requires that all members of the public body be invited, to prevent any possible circumvention of the act. Finally, Crook v. Clark Tp., 74 N.J. Super. 148, 154 (Law Div. 1962), states that: "every member of a municipal council is entitled to reasonable notice of special meetings, and no important action may lawfully be taken unless such notice has been given * * *"
Myra Nell Cohen, a clerk in the office of the borough clerk, stated in her affidavit that, at the instruction of Borough Clerk Dockery, she telephoned five newspapers, including the official Pompton Bulletin, more than 48 hours in advance to inform them of the special meeting, and caused to be publicly posted in the Municipal Building a written statement containing the same information given to the newspapers. The notice included the date and time of the special meeting *166 and that the purpose of the meeting was to consider a resolution appointing an attorney to represent the borough in tax appeals to the State. Penciled notations, apparently made by Miss Cohen, indicate that she called the five newspapers between 2:30 and 2:45 P.M. on December 17, 1976. Dockery, in his affidavit and testimony, stated that on December 27 a notice of the special meeting was delivered to the mayor and members of the council by officers of the Pompton Lakes Police Department, and that at the outset of the meeting Mayor Spinnanger stated its purpose and that notice had been given to the public and others in accordance with the Sunshine Law. In addition, a letter dated December 27, 1976, was sent to the five papers iterating the information telephoned by Miss Cohen.
Based on the uncontroverted information contained in these affidavits and testimony, the court finds that the statutory requirements set out above were, in essence, complied with. There were, however, some minor deficiencies which, as will be discussed, the court does not consider fatal.
First of all, the notice does not specifically state that formal action would be taken. However, the statement that a resolution naming an attorney would be considered is, in essence, the functional equivalent.
Concerning the requirement of 48 hours' notice to the newspapers, neither plaintiffs' nor defense counsel presented evidence that the notices were, in fact, published by the newspapers to which notice was sent. Dockery, in his testimony, stated that he interpreted the Open Public Meetings Act as not requiring actual publication by the newspapers, the borough's obligation under the act being fulfilled once the newspapers were notified.
In Jones v. East Windsor Regional Bd. of Ed., 143 N.J. Super. 182 (Law Div. 1976), the board did notify the newspapers as required by the statute. However, several of the papers were weeklies that did not publish between the time of delivery of the notice and the meeting. One daily paper did publish the notice on the day of the meeting. The court, *167 in holding that this did not comply with the notice requirement, stated: (at 190) that "when the Legislature says at least 48 hours notice that means the notice should be published 48 hours before the meeting  not delivered to some area of publication 48 hours before the meeting." (Emphasis added)
N.J.S.A. 10:4-8(d) states, in part that
"Adequate notice" means written advance notice of at least 48 hours, * * * which shall be (1) prominently posted in at least one public place reserved for such or similar announcements, (2) mailed, telephoned, telegrammed, or hand delivered to at least two newspapers * * *
This court does not agree with the interpretation of this provision in Jones and, not being bound by that decision, declines to follow it. This court interprets the provision as requiring a public body to post and merely transmit to the appropriate newspapers a notice at least 48 hours prior to the meeting. The conclusion in Jones is logically persuasive. The purpose of the act is to insure the public's right to attend and observe public bodies at work, and the burden is on the public body to insure that proper notice is given. Therefore, it would be logical to conclude that the Legislature required actual publication 48 hours prior to the meeting. Without such prior notice the public's right to attend and observe would be a hollow one at best. However, it is equally reasonable to conclude that, once a public body has given 48 hours advance notice to the newspapers, it has made all reasonable effort to notify the public. The public body should not be penalized because a newspaper, over which it has no control, has failed to fulfill its civic duty to publish the public notice. The court assumes that these considerations motivated the Legislature to only require 48 hours' advance notice to the newspapers. Support for this assumption is found in the following excerpt from the statement accompanying Assembly Bill 1030:
*168 Section 3 also defines the "adequate notice" which is required for the public body's regular and special meetings. Normally, 48 hours' advance notice must be prominently posted, filed with a certain officer of the public body, and provided to two newspapers. Publication of legal notice is not required. [Emphasis supplied]
Further support for the court's conclusion is found in the New Jersey Department of State's Guidelines on the Open Public Meetings Law, which contains the following statements:
Does the law require the public body to have the notices published in the newspapers or only sent to them?
Answer: The law requires the public body to transmit the notices to the newspapers. It does not require that the notices be published, nor, on the other hand, does it prohibit publication of them.
When a public body mails the `48 hour notice' to the newspapers, must the notice be placed in the mail or actually received by the newspapers at least 48 hours before the meeting?
Answer: Although the law is unclear of this question, the law's intent seems to be that the notice must be placed in the mail at a sufficient time in advance so as to reasonably be expected to be received by the newspapers at least 48 hours prior to the meeting. [at 8-9]
In view of the foregoing, the court concludes that actual publication of the notices in the appropriate newspapers is not required by N.J.S.A. 10:4-8(d).
However, the notice telephoned to the newspapers and posted in the municipal building is deficient in that it fails to give the location for the special meeting. The court's attention has been drawn to a clause in N.J.S.A. 10:4-15 which states: "* * * provided further than any action for which advance published notice of at least 48 hours is provided as required by law shall not be voidable solely for failure to conform with any notice required in this act." A literal interpretation of this phrase would mean that even though no notice of the meeting was ever given, that alone would not make the action of the public body voidable. However, such an interpretation would nullify the entire notice requirement.
*169 Courts must adopt that construction of a statute which reconciles and gives reasonable meaning to all its provisions. Beard v. Aldrich, 106 N.J.L. 266 (Sup. Ct. 1930), aff'd 107 N.J.L. 516 (E. & A. 1931). Statutes must, if reasonably possible, be accorded a construction which is sensible and consonant with reason and good discretion, rather than one which, though liberal, leads to absurd consequences. Petition of Gardiner, 67 N.J. Super. 435 (App. Div. 1961). Statutes should not be interpreted so as to produce an absurd or anomalous result. Manchester Tp. Bd. of Ed. v. Raubinger, 78 N.J. Super. 90 (App. Div. 1963). Therefore, the court concludes that this provision was intended to cover those situations where some notice has, in fact, been given, but the notice was in some manner defective or incomplete because of a typographical error, a failure to include in the notice all the necessary information, incompleteness of the subjects listed for the agenda, or a number of similar situations. This interpretation was first adopted by the court in Jones v. East Windsor Regional Bd. of Ed., supra, and is supported by the following excerpt from the statement accompanying Assembly Bill 1030:
Section 10 also provides that an action such as adoption of an ordinance where there has been advance published notice of at least 48 hours shall not be voidable solely for failure to conform with notice requirements of this Act. [Emphasis supplied]
Under this provision, then, failure to state the location of the meeting would not be a fatal defect in the notice provided for the December 29 special meeting. Moreover, substantial compliance is all that is normally required. "Substantial compliance" with a statutory requirement is normally sufficient and occurs whenever, as a practical matter, it is reasonable to conclude that partial compliance has fully attained the objective of the statute as though there had been complete and literal compliance  in other words, that there has been such compliance with the essential requirements of the statutory provision as may be sufficient for *170 the accomplishment of its purpose. Stasher v. Harger-Haldeman, 58 Cal.2d 23, 22 Cal. Rptr. 657, 372 P.2d 649 (1962); People v. Omen, 290 Ill. 59, 124 N.E. 860 (1919); Coe v. Davidson, 43 Cal. App.3d 170, 117 Cal. Rptr. 630 (1974); Kansas City v. Wyandotte Cty. Bd. of Cty. Comm'rs, 213 Kan. 777, 518 P.2d 403 (1974); In Re Rudd's Estate, 140 Mont. 170, 369 P.2d 526 (1962). What constitutes "substantial compliance" depends on the particular facts of each case. Trussell v. Fish, 202 Ark. 956, 154 S.W.2d 587 (1941).
From the record it appears that all council meetings were held at the Municipal Building. Since the notice does not make any statement to the contrary, it is reasonable to conclude that any Pompton Lakes citizen, upon reading the notice, would assume that the meeting was being held at the normal location. The word "notice," as used in a statute, means knowledge or information; whatever puts one upon inquiry amounts to notice. Boynton Real Est. Co. v. Woodbridge Tp., 94 N.J.L. 226 (E. & A. 1920). The notice provided by the borough contained sufficient information to inform the public that a special meeting would be held, and any interested citizen could quite easily have inquired as to the location of the meeting. Therefore the basic purpose of the notice provision was fulfilled, as if there had been complete compliance with the statutory requirements.
N.J.S.A. 10:4-10 states that
At the commencement of every meeting of a public body the person presiding shall announce publicly, and shall cause to be entered in minutes of the meeting, an accurate statement to the effect:
a. that adequate notice of the meeting has been provided, specifying the time, place and manner in which such notice was provided * * *.
The statement accompanying Assembly Bill 1030 contains the following comment on this provision: "Section 5 requires a statement at every meeting confirming that adequate notice was provided."
*171 The official minutes of the December 29, 1976, meeting do not indicate that such a statement was made by Mayor Spinnanger. However, Dockery, in his affidavit and testimony stated that "At the outset of the meeting of December 29, 1976, Mayor John P. Spinnanger stated the purpose of the meeting and stated that notice had been given to the public and others in accordance with the Sunshine Law." Further, at the June 15, 1977 special meeting of the council the following resolution was adopted to correct an inadvertent omission from the minutes of the December 29, 1976 special meeting:
Now, be it resolved by the Mayor and Council of the Borough of Pompton Lakes that the minutes of the special meeting of December 29, 1976, be corrected to read: Mayor Spinnanger stated that the meeting was being held in conformance with the Open Public Meetings Act, and the agenda had been telephoned to the Mayor and Council, Trends, Paterson News, Herald News, Today, and the Bulletin newspapers before 3:00 p.m. on Monday, December 27, 1976, and posted on the municipal bulletin board.
Plaintiffs' attorney initially argued that failure of the minutes to indicate compliance with N.J.S.A. 10:4-10 was sufficient grounds for voiding the action taken at that meeting. However, after the filing of Dockery's answering affidavit, plaintiffs' attorney failed to present contradictory evidence or to argue that the statement of Mayor Spinnanger did not meet all the specific statutory requirements of N.J.S.A. 10:4-10. There is a presumption that a public body has followed statutory procedural requirements, and the burden is on plaintiffs to present affirmative proof that the borough failed to comply with the requisite facilities. Staats v. Washington, 45 N.J.L. 318 (Sup. Ct. 1883), aff'd 46 N.J.L. 209 (1884); Catalano v. Pemberton Tp. Bd. of Adj., 60 N.J. Super. 82 (App. Div. 1960). Therefore, it is not necessary for the court to determine whether the mayor's statement substantially complied with these statutory requirements.
*172 As to the failure of the clerk to record the mayor's statement in the official minutes, the court finds that this deficiency in the record is not fatal to the borough's action. In Manning v. Paramus, 37 N.J. Super. 574 (App. Div. 1955), the court stated:
We are not in the law to presume, however, in all circumstances that no essential official action was taken merely because of the absence of any relative entry thereof in the minutes prepared by the clerk or secretary at the meeting. Cf. Hasbrouck Heights Hosp. Ass'n v. Borough of Hasbrouck Heights, 15 N.J. 447, 454 (1954). (1) The legal presumption runs in the opposite direction toward the implication that the proceedings of governmental bodies are conducted according to the requirements of the law. [at 579]
Further, in Catalano v. Pemberton Tp. Bd. of Adj., supra, it was determined that, pursuant to then R.S. 40:145-4, the clerk of the township was mandatorily required to keep a record of the proceedings of the governing body. Yet, the court, by implication, stated that omission of procedural items from existing minutes could be rectified by parol evidence that such requirements were complied with. From the affidavit and testimony of Clerk Dockery and the council's subsequent action at its June 15, 1977 meeting, the court concludes that the mayor did, in fact, make a statement at the outset of the December 29, 1976 special meeting concerning compliance with the requirements of N.J.S.A. 10:4-10. The inadvertent failure of the minutes to note this statement is not a fatal defect.
Plaintiffs' attorney alleges in his brief that he did not receive a notice of the special meeting for December 29, 1976. Absent further elaboration on this point, the court assumes that the attorney is alleging a failure by the borough to comply with N.J.S.A. 10:4-19, which provides in part:
Any person may request that a public body mail to him copies of any regular meeting schedule or revision described in section 13 of this act. [N.J.S.A. 10:4-18] and any advance written notice described in Subsection 3.d. of this Act [N.J.S.A. 10:4-8(d)] of any regular, special or rescheduled meeting of such body, *173 and upon prepayment by such person of a reasonable sum, if any has been fixed by resolution of the public body to cover the costs of providing such notice, the public body shall mail to such person written advance notice of all of its meetings within the time prescribed by subsection 3.d., herein, subject only to the exceptions set forth in subsection 4.b. herein. [N.J.S.A. 10:4-9(b)].
On January 7, 1976 the borough did pass a resolution stating:
That any person requesting copies of regular meetings schedule or revisions thereof and any advance written notice described in Subsection 3.d. of the Open Public Meetings Act of any regular, special or rescheduled meeting of the Mayor and Council upon payment by such person of the sum of $100.00 annually to cover the cost of providing such notice shall be mailed such copies.
The court notes that the definition of "adequate notice," N.J.S.A. 10:4-8(d), does not require that this type of notice be given. In addition, plaintiffs' attorney has failed to provide any evidence that he complied with the requirements of N.J.S.A. 10:4-19 and the borough's resolution, thereby entitling him to such notice. Therefore, the court is not required to determine whether failure to provide such notice is reasonable grounds for voiding the council's action at the special meeting.
Finally, plaintiffs' attorney alleges that a quorum did not exist at the special meeting. This contention is without merit. The notation in the official minutes that three councilmen were absent is in error. The record of the actual vote reveals that only two councilmen were absent and Dockery, in his uncontroverted affidavit and testimony, stated that only two councilmen were absent.
To summarize, the court has found that (1) the borough council violated several provisions of the Open Public Meetings Act at its December 8, 1976 meeting when it voted in closed session to proceed with the tax appeals and retain Herman Steinberg to represent the borough; (2) the borough could, pursuant to N.J.S.A. 10:4-15, retroactively ratify its action of December 8, 1976 at its special meeting *174 of December 29, 1976, provided that the meeting fulfilled all the requirements of the act; (3) the borough's special meeting of December 29, 1976 did, in essence, comply with the provisions of the act. Therefore, plaintiffs' complaint is dismissed.
Having determined that the borough may proceed with the tax appeals, it is not necessary for the court to consider defendants' third-party claim for indemnification against the third-party defendant. The court, finding that the third-party plaintiff's complaint, although not disposed of because of the decision on the original complaint, was not frivolous, denies the third party defendants' claim for costs and council fees.
NOTES
[1] This matter was submitted for determination on affidavits, oral testimony, agreed exhibits and oral and written legal argument.
[2] It should be noted that at the first oral argument third-party plaintiff abandoned its request that the court set aside the decision of the Passaic County Board of Taxation and direct a full rehearing before that body. In addition, the county board was by consent dismissed as a third-party defendant.
[3] It should be noted that this third theory was abandoned by plaintiffs counsel at the first oral argument.