**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4421-15T2
               A-0195-16T2

280 ERIE STREET, LLC;
212 MARIN BOULEVARD, LLC;
247 MANILA AVENUE, LLC;
317 JERSEY AVENUE, LLC;
354 COLE STREET, LLC;
389 MONMOUTH STREET, LLC;
415 BRUNSWICK STREET, LLC;
AND 446 NEWARK AVENUE, LLC,

      Plaintiffs-Appellants,

v.

CITY OF JERSEY CITY,

      Defendant-Respondent.

_____

317 JERSEY AVENUE, LLC,
212 MARIN BOULEVARD, LLC;
247 MANILA AVENUE, LLC;
280 ERIE STREET, LLC;
354 COLE STREET, LLC;
389 MONMOUTH STREET, LLC;
415 BRUNSWICK STREET, LLC;
AND 446 NEWARK AVENUE, LLC,

      Plaintiffs-Appellants,

v.

CITY OF JERSEY CITY,

      Defendant-Respondent.

_____

Argued April 16, 2018 — Decided July 24, 2018

Before Judges Messano, O'Connor, and Vernoia.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket Nos. L-4619-15 and L-0843-16.

Eric D. McCullough argued the cause for appellants (Waters, McPherson, McNeill, PC, attorneys; Eric D. McCullough and Daniel E. Horgan, of counsel; Eric D. McCullough, on the briefs.

Jason M. Hyndman argued the cause for respondent (John J. Curley, LLC, attorneys; John J. Curley, of counsel; Jason M. Hyndman, on the brief).

PER CURIAM

We consolidated these back-to-back appeals to issue a single opinion. Plaintiffs are limited liability companies that own properties in the City of Jersey City (the City) known locally as the Embankment. In A-4421-15, plaintiffs appeal from the Law Division's May 5, 2016 order that entered judgment in favor of the City and dismissed plaintiffs' complaint in lieu of prerogative writs challenging the City's adoption of Ordinance 15.125, which authorized the City to issue bonds to fund the purchase of the Embankment. In A-0195-16, plaintiffs' appeal from the Law Division's August 17, 2016 order that entered judgment in favor of the City and dismissed plaintiffs' complaint in lieu of prerogative writs challenging passage of Ordinance 15.186. That

authorized the City to submit an Offer of Financial Assistance (OFA) to the Surface Transportation Board (STB) pursuant to 49 U.S.C. § 10904, to obtain STB's approval of the purchase.

I.

<u>Background</u>

The Embankment is comprised of two at-grade lots and six lots improved with stone, earth-filled railroad embankment walls. Plaintiffs purchased the Embankment, part of the Harsimus Branch, a railroad line used to transport freight, from Consolidated Rail Corporation (Conrail) in 2005.[1] The City challenged the sale, arguing that Conrail failed to apply to the STB for permission to abandon the Harsimus Branch as required by the Interstate Commerce Commission Termination Act (ICCTA), 49 U.S.C. §§ 10101 to 11908, specifically 49 U.S.C. § 10903, before demolishing the railroad infrastructure and selling the land. This led to protracted litigation before the STB and in the federal courts, <u>see</u> <u>City of Jersey City v. Consolidated Rail Corp.</u>, 968 F. Supp. 2d 302 (D.D.C. 2013), <u>aff'd.</u>, 2014 U.S. App. LEXIS 3067* (D.C. Cir. 2014), resulting in a ruling that the Harsimus Branch was "subject to the STB's abandonment jurisdiction." <u>Id.</u> at 308.

---

[1] It is undisputed that sometime in the 1990s, Conrail terminated all service on the Harsimus Branch and removed all track, signals and bridges that connected the Embankment to the rail network west of it.

3

In 2009, while the above-described litigation was pending, Conrail began abandonment proceedings before the STB. 49 U.S.C. § 10904(c) provides that after a rail carrier files for permission to abandon a rail line, any person may offer to purchase the line. If an OFA is submitted by a "financially responsible person" as determined by the STB in accordance with 49 C.F.R. § 1152.27, abandonment is postponed until either the carrier and the offeror reach an agreement for the sale, or the STB sets terms and conditions. 49 U.S.C. § 10904(d)(2). Thereafter, the purchaser may not discontinue service on the rail line for a period of two years. 49 U.S.C. § 10904(f)(4)(A). In March 2009, the City submitted notice of its intention to file an OFA and purchase the Harsimus Branch.

The City's Efforts to Acquire the Embankment

In July 2010, the City adopted Ordinance 10.085 authorizing bonding of approximately $7.7 million to fund "the acquisition . . . of real property and the improvements thereon known as the Harsimus Embankment Park and Greenway Project, including, but not limited to, [the Embankment]." The ordinance stated that "the estimated cost of the improvement or purpose" was equal to the amount of the appropriation, and that the period of usefulness for the proposed purposes was forty years. During the litigation in the Law Division, the City's special railroad

counsel, Henry M. Montagne, certified that the City enacted Ordinance 10.085 while it was engaged in settlement discussions with plaintiffs to acquire the Embankment in a consensual sale, and when this failed, the City decided to use the OFA process to acquire the properties.

In September 2014, the City adopted Ordinance 14.103, which ostensibly approved the submission of an OFA and authorized the Corporation Counsel and Business Administrator to take certain steps in contemplation of purchasing the Embankment. Plaintiffs filed a complaint in lieu of prerogative writs, challenging the ordinance and asserting the City Council's closed-door September 8, 2014 meeting at which members discussed the ordinance with Montagne violated the Open Public Meetings Act (OPMA), N.J.S.A. 10:4-6 to -21. Ultimately, the Law Division judge, Christine M. Vanek, concluded the City had violated the OPMA; she invalidated Ordinance 14.103 and ordered the City to conduct de novo proceedings "such that all non-privileged deliberations regarding the ordinance are conducted before the public."

While the challenge to Ordinance 14.103 was pending, the City adopted Ordinance 15.125, which expressly authorized bonds or bond anticipation notes for $7.7 million. One expressed reason for the ordinance was "to change the purpose of Ordinance 10.085." To that end, Section 3 of Ordinance 15.125 stated that

the purpose for which the bonds are to be issued is (1) the acquisition . . . of real property and the improvements thereon known as the Harsimus Embankment Park and Greenway Project, including, but not limited to, [the Embankment], (2) the acquisition . . . of such additional property as may be necessary to link the properties described in clause (1) above to the national freight rail network . . . (3) the rehabilitation, replacement and/or reconstruction of all or a portion of the rail facilities located or previously located on the properties . . . and (4) the establishment of open space for active and/or passive recreation by the public . . . .

Section 3 further stated that the estimated cost of the listed purposes was equal to the amount of the bond appropriation, and Section 6 stated that the period of usefulness for these purposes was thirty years, "representing a reduction from the [forty] years stated in . . . Prior Ordinance [10.085]."

Plaintiffs filed a complaint in lieu of prerogative writs challenging Ordinance 15.125. They primarily contended the ordinance violated the Local Bond Law (LBL), N.J.S.A. 40A:2-1 to -64, and the City failed to seek guidance from the Division of Local Government Services (LGS) before setting the period of useful life for the bonds' proposed purposes. Following oral argument, on May 5, 2016, Judge Vanek issued a comprehensive written decision upholding Ordinance 15.125, finding in sum that plaintiffs failed to prove the City's actions were arbitrary, capricious, or

unreasonable. Plaintiffs filed their notice of appeal in A-4421-15.

In the interim, on December 16, 2015, in response to the judge's invalidation of Ordinance 14.103, the City introduced Ordinance 15.186, which was largely identical to the earlier ordinance and again authorized submission of an OFA to the STB. The City attached to the ordinance a redacted transcript from the city council's September 8, 2014 closed-door hearing, which was released by the judge to plaintiffs during the earlier litigation. After a public meeting on January 13, 2016, the City adopted Ordinance 15.186.

Plaintiffs filed suit, arguing the process again violated the OPMA, the ordinance was legally flawed and the City's actions were arbitrary, capricious and unreasonable. After considering oral argument, on August 17, 2016, Judge Vanek upheld Ordinance 15.186, concluding the City did not violate the OPMA, the STB's exclusive jurisdiction pre-empted plaintiffs' arguments regarding the validity of the proposed OFA and the City's actions were not otherwise arbitrary, capricious or unreasonable. Plaintiffs filed their notice of appeal in A-0195-16.

Plaintiffs' challenge to Ordinance 15.125, which authorized the issuance of bonds for, among other things, the purchase of the Embankment, reiterates several arguments made before the trial judge. Specifically, plaintiffs argue the ordinance violated the LBL by failing to include separate cost estimates for each of its four purposes, the ordinance's stated period of usefulness was in violation of the LBL, and the City's failure to seek guidance from LGS before adopting that period was fatal. We disagree and affirm.

Our Constitution requires any law concerning the powers of municipal corporations be liberally construed in their favor so as to include those powers expressly conferred by the Legislature or otherwise fairly implied. D.L. Real Estate Holdings, LLC v. Point Pleasant Beach Planning Bd., 176 N.J. 126, 132 (2003) (citing N.J. Const. art. IV, § 7, ¶ 11). Thus, "[m]unicipal ordinances, like statutes, carry a presumption of validity." Newfield Fire Co. No. 1 v. Borough of Newfield, 439 N.J. Super. 202, 209 (App. Div. 2015) (quoting Hutton Park Gardens v. Town Council of W. Orange, 68 N.J. 543, 564 (1975)).

"Accordingly, a party challenging a municipal ordinance has a heavy burden[,]" ibid., and "an ordinance may be overturned only if it is arbitrary and unreasonable." Hudson County v. Jersey

<u>City</u>, 153 N.J. 254, 266 (1998). As Justice Pashman explained more than forty years ago,

> Legislative bodies are presumed to act on the basis of adequate factual support and, absent a sufficient showing to the contrary, it will be assumed that their enactments rest upon some rational basis within their knowledge and experience. This presumption can be overcome only by proofs that preclude the possibility that there could have been any set of facts known to the legislative body or which could reasonably be assumed to have been known which would rationally support a conclusion that the enactment is in the public interest.
>
> [<u>Hutton Park Gardens</u>, 68 N.J. at 564-65 (citations omitted).]

"The job of a reviewing court is not to weigh the evidence for or against an enactment, or to evaluate the wisdom of the policy choice made." <u>New Jersey Shore Builders Ass'n v. Twp. of Jackson</u>, 199 N.J. 38, 55-56 (2009) (citing <u>Hutton Park Gardens</u>, 68 N.J. at 565).

Municipalities, however, may not wield their powers "in contravention of the overarching statutory grant of authority or conflict otherwise with an express statutory limitation or prohibition." <u>Varsolona v. Breen Capital Servs. Corp.</u>, 180 N.J. 605, 625 (2004) (citations omitted). They may not enact an ordinance that violates the federal or state constitution. <u>Rumson Estates, Inc. v. Mayor & Council of Fair Haven</u>, 177 N.J. 338, 351 (2003) (citation omitted). We review such legal issues de novo.

See, e.g., <u>388 Route 22 Readington Realty Holdings, LLC v. Twp. of Readington</u>, 221 N.J. 318, 338 (2015) ("In construing the meaning of a statute, an ordinance, or our case law, our review is de novo.").

In her written decision, Judge Vanek found that the ordinance's language and other evidence in the record "acknowledged . . . there [were] several complimentary components of an overarching goal with respect to the subject property." She further found that the ordinance "specifically state[d] that the purpose of the funding [was] the acquisition of the Embankment property," and concluded the purchase of other properties to link to a rail network, the rehabilitation of the properties to support rail service, and the establishment of open space were all tied to that acquisition.

The judge reasoned that "the greater level of specificity provided in Ordinance 15.125 . . . [did] not negate . . . the ordinance has a single purpose" and render it invalid for failing to set multiple cost estimates. She also found there were sufficient facts before the city council to support a cost estimate of $7.7 million, including the Council's deliberations on the prior Ordinance 10.085 and advice from Montagne and the city's bond counsel.

Plaintiffs first argue the LBL requires every bond ordinance to "estimate the costs of each of" its purposes and "disclose the same to the public." They argue the evidence fails to support the trial judge's conclusion that there was a single overriding purpose.

The LBL provides:

> A bond ordinance shall contain in substance the following:
>
>> a.(1) an authorization for the issuance of obligations, <u>stating in brief and general terms</u> sufficient for reasonable identification <u>the purpose or purposes for which the obligations are to be issued</u>, a statement of the estimated maximum amount of bonds or notes to be issued, and <u>the estimated cost of such purpose or purposes, but related improvements or properties may be treated as one improvement or property</u> . . . .
>>
>> [N.J.S.A. 40A:2-12(a)(1) (emphasis added).]

The statute only mandates that "certain <u>required</u> items of information must first be set forth 'in brief and general terms' in the bond ordinance. No other matters are <u>required</u> to be set forth therein." <u>Dolan v. Tenafly</u>, 75 N.J. 163, 170 (1977) (emphasis in original) (quoting N.J.S.A. 40A:2-12); <u>see also</u> <u>Matlack v. Bd. of Chosen Freeholders</u>, 191 N.J. Super. 236, 251-252 (Law Div. 1982) (citing <u>Dolan</u>, 75 N.J. at 171-72) ("In advising

the public of their purpose, bond ordinances need not particularize every ramification, product or denouement in implementing that purpose.").

Plaintiffs argue there was no "factual support" connecting the stated purposes of creating "open space" on the Embankment with construction of railroad improvements, or that the City ever intends to continue rail service, as required by the STB, on the Embankment. However, the record amply supports the judge's conclusions that Ordinance 15.125 expressed the City's singular purpose for issuing the bonds was to acquire the Embankment for the various uses listed. The brief history we described above makes that abundantly clear, and plaintiffs' skepticism about the City's intent to utilize the Embankment for rail service does not, for our purposes of review, make the adoption of Ordinance 15.125 arbitrary, capricious or unreasonable.

Plaintiffs argue with no legal support that we must set aside Ordinance 15.125 because the City was required to supply cost estimates for all four "purposes" set out in the ordinance. However, plaintiffs' reliance, such as it is, on Judge Conford's dissenting opinion in Dolan misses the point of the majority's holding.

In Dolan, 75 N.J. at 167, the municipality approved a bond ordinance to purchase open space. Subsequent events resulted in

12                                                            A-4421-15T2

the municipality passing a resolution that approved the purchase of significantly less acreage, albeit at a slightly reduced cost, from that described in the ordinance.  Id. at 167-68.  Plaintiffs challenged the resolution, arguing it violated the LBL because the municipality could not alter by resolution the purpose for which the bonds were to be issued, the maximum amount of the bonds or the estimated costs of the project.  Id. at 169-71.

The Court rejected these claims, noting in part:

> This argument fails to recognize the need for sufficient flexibility in the fiscal mechanism to permit adaptation to conditions and circumstances discovered during the execution of a project.  It would seriously hamper the effectuation of substantial public improvements were it necessary to set forth in specific detail every element of such a proposal and then require an amending ordinance each time a change became necessary or desirable.
>
> [Id. at 172.]

Where there are "good faith proceedings" in adopting an ordinance, the LBL is not intended "to demand rigid adherence to initial calculations which are no more than preliminary estimates . . . ." Ibid.  Plaintiffs' argument here is unavailing.

Plaintiffs next contend we must set aside Ordinance 15.125 because it does not include periods of usefulness for each component, the City could not supply an average period of usefulness without pricing each component, the record is devoid

of any facts supporting the estimated period of usefulness, and the City was required to seek the approval of LGS before setting the useful life period at thirty years.  Judge Vanek concluded there was one overriding purpose for the ordinance, and, therefore, the City did not need to include multiple estimated periods of usefulness.  She also determined the LBL did not require that the ordinance describe the methodology used to calculate the period of usefulness.  We agree with this reasoning.

N.J.S.A. 40A:2-12(b) states that a bond ordinance must contain "a determination of the period of usefulness of the purpose within the limitations of this chapter or, if issued for several purposes, a determination of the average period of usefulness, taking into consideration the respective amounts of obligations authorized for the said several purposes."  In other words, nothing in the statute's plain language mandates an ordinance include a description of how a municipality determined the period of usefulness.  Clearly, in reaching its decision, a municipality cannot act in an arbitrary, capricious or unreasonable fashion.  However, Judge Vanek noted the City had reasonably relied upon "the useful life categories listed in N.J.S.A. 40A:2-22" in setting the thirty year period.  We agree.

N.J.S.A. 40A:2-22 provides that a municipality shall "determine the period of usefulness of any purpose according to

14                                        A-4421-15T2

its reasonable life computed from the date of the bonds." It provides different categories of purposes and the maximum periods of usefulness that may be assigned to each. Ibid. N.J.S.A. 40A:2-22(a)(1) sets a maximum period of usefulness of thirty years for "[b]ridges, including retaining walls and approaches, or permanent structures of brick, stone, concrete or metal, or similar durable construction." Subsection (d) of N.J.S.A. 40A:2-22 is entitled "Real property," and sets a forty-year period of usefulness for "[a]cquisition for any public purpose of lands . . . ." N.J.S.A. 40A:2-22(d)(1). The creation of a park, trail, or other open space appears to fall squarely under this provision.

The purchase of land for railway improvements is not specifically covered by the statute, although the City's acquisition of the Embankment is "for a[] public purpose," N.J.S.A. 40A:2-22(d)(1), and, in this unique case, includes acquiring "permanent structures . . . of durable construction," N.J.S.A. 40A:2-22(a)(1). In short, nothing in the record supports the assertion that the City violated the LBL by setting a thirty-year period of usefulness. Moreover, the change from the forty-year period in Ordinance 10.085, to the thirty-year period in Ordinance 15.125, recognized one of the intended uses for the Embankment now included rail-related construction.

Lastly, plaintiffs' contention that the City was required to seek the advice of LGS before setting a period of usefulness in the ordinance lacks sufficient merit to warrant extensive discussion. N.J.S.A. 40A:2-22.1 provides: "A [municipality] may request . . . that the Director of [LGS] determine a period of usefulness for any capital improvement or property not included in N.J.S.A. 40A:2-22, provided that the maximum period of usefulness so determined shall not exceed 15 years." The judge concluded the statue's use of the term "may" indicated it was permissive and did not compel the City to request the opinion of LGS. See Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 325 (2000). We agree.

We affirm in A-4421-15.

### III.
### (As to A-0195-15)

Plaintiffs' challenge to Ordinance 15.186 is multi-faceted. They attack the ordinance by arguing it authorized the filing of a legally deficient OFA, because there was no evidence supporting a "need for rail service on the Embankment" and the City's true "improper purpose" was to acquire plaintiffs' properties for other "non-rail purposes." Plaintiffs also argue the ordinance improperly delegated "legislative judgment" to non-elected officials and New Jersey law prohibits a municipality from filing

an OFA. Lastly, plaintiffs contend the City failed to cure its prior violation of the OPMA when it enacted Ordinance 15.186.

Judge Vanek concluded the plain language of 49 U.S.C. § 10501 pre-empted her consideration of plaintiffs' arguments regarding the legal sufficiency of the City's OFA and plaintiff's suggestion that the STB would otherwise reject the OFA. She found that § 10501 granted the STB exclusive jurisdiction over the OFA process, holding:

> The court is without jurisdiction to conclude that the OFA, which has not even been filed at this juncture, would in fact violate applicable laws. It is within the exclusive province of the STB to determine whether the OFA that is ultimately submitted is proper under its applicable standard of review.

We agree with her analysis.

49 U.S.C. § 10501(b)(2) states that the STB's jurisdiction over "the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities . . . is exclusive." Further, except as otherwise provided in the ICCTA, all statutory remedies "with respect to regulation of rail transportation" are exclusive. Ibid.

In Chicago & North Western Transporation Company v. Kalo Brick & Tire Company, 450 U.S. 311, 320 (1981), the United States Supreme Court found the STB's predecessor agency, the Interstate Commerce Commission, had "exclusive" and "plenary" authority "to

regulate abandonments." The Court further held the breadth of the ICC's statutory discretion in abandonment matters "suggest[ed] a congressional intent to limit judicial interference with the agency's work." Id. at 321.

The Court addressed a state court's decision upholding a state statute's damages remedy for a disappointed shipper after a rail carrier abandoned a line. Id. at 324-32. The Court found the state was preempted from affording such a remedy, because "Congress granted the exclusive discretion" "to the [ICC]" to decide whether an abandonment was proper. Id. at 326. Thus, "there [was] no further role that [a] state court could play" by awarding damages related to an abandonment, since this would be contrary to Congress' grant of exclusive authority to the ICC. Ibid.

In Borough of Columbia v. Surface Transportation Board, 342 F.3d 222, 231-32 (3rd Cir. 2003), the Third Circuit made clear that a reviewing court could not compel the STB to require a certain level of proof regarding the likelihood of continued rail service before the agency accepted an OFA. The court stated such review "would . . . ignore that Congress has tasked that agency, not [a] court, with factfinding responsibilities" in OFA proceedings. Id. at 232. The court further found that "[e]valuating and comparing minutiae in the evidence" for and

A-4421-15T2

against the validity of a given OFA "would be neither a desirable nor a practicable level of review for [a] court to undertake -- especially when it is the STB's 'exclusive province to draw legitimate inferences from the evidence.'" Ibid. (quoting Redmond-Issaquah R.R. Preservation Ass'n (RIRPA) v. Surface Transp. Bd., 223 F.3d 1057, 1064 (9th Cir. 2000)).

Plaintiffs' reliance on Ridgefield Park v. New York Susquehanna & W. Ry. Corp., 163 N.J. 446 (2000), and Norfolk S. Ry. Co. v. Intermodal Props., LLC, 424 N.J. Super. 106 (App. Div. 2012), is misplaced. Ridgefield Park involved the scope of municipal regulation of railroad properties, and whether federal law preempted that particular action. Ridgefield Park, 163 N.J. at 460-62 (holding municipality could enforce safety codes on railroad property, but not compel site plan approval). In Norfolk Southern, 424 N.J. Super. at 126-27, citing the STB's precedent, we concluded that the railroad's exercise of eminent domain was subject to state law and not otherwise pre-empted by federal law.

Here, the issue was whether a state court should consider the merits of an OFA in deciding whether a municipality acted arbitrarily, capriciously or unreasonably in enacting an ordinance permitting the submission of an OFA. Congress has granted the STB exclusive jurisdiction over the merits of any OFA. More importantly, the trial judge never concluded she lacked

19

jurisdiction to consider plaintiffs' challenge to Ordinance 15.186. She only determined federal law pre-empted her consideration of those arguments that challenged the potential OFA's conformity with federal requirements or STB's potential approval.

It is clear that the STB may ultimately deny the City's OFA because, as plaintiffs contend, the municipality has no intention to continue rail service on the Embankment. See, e.g., RIRPA, 223 F.3d at 1062 (noting that the STB has been "consistent in continuing to require" that an OFA be for continued rail service on a line that otherwise would be abandoned).[2] However, Judge Vanek correctly concluded the decision was the STB's to make.

---

[2] After the briefs were filed, plaintiffs brought to our attention the STB's June 29, 2017, decision concerning rulemaking to modify agency procedures pertaining to OFAs. Therein, the STB stated that its existing precedents require that an OFA "be for continued rail service." STB Docket No. EP 729, pp. 15-16. We acknowledge that case law and agency guidance require an OFA offeror to demonstrate bona fide intentions to continue rail service on an abandoned line. Whether the City can actually carry that burden, particularly in light of its intention to use at least some of the Embankment as open space, is for the STB to decide.

Additionally, plaintiffs' argument that State law prohibits the City from using an OFA to purchase abandoned rail lines lacks sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E). N.J.S.A. 40:9-2.1 provides a municipality "may acquire, by purchase or lease, maintain, improve, equip and operate any existing public transportation passenger or freight rail line, including its appurtenant lands and ancillary structures and facilities."

Plaintiffs also urge us to invalidate Ordinance 15.186 because it improperly delegated broad authority to the City's Corporation Counsel and Business Administrator to prepare and file the OFA and purchase plaintiffs' properties. A legislative body like the city council "may delegate its authority as long as it provides standards to guide the discretionary exercise of the delegated power." Worthington v. Fauver, 88 N.J. 183, 208 (1982). If an ordinance making such a delegation "is totally devoid of standards to guide and control administrative officials," it "cannot stand." Flama Constr. Corp. v. Franklin, 201 N.J. Super. 498, 503 (App. Div. 1985). However, standards in an ordinance governing the exercise of delegated authority may be either express or implied from the ordinance as a whole. Ibid. Standards may also be "general, as long as they are as precise and revealing as the subject reasonably permits," Worthington, 88 N.J. at 209, and "as long as they are sufficiently specific to guide" those to whom the delegation is made "in the exercise of [their] discretion." In re Egg Harbor Assocs., 94 N.J. 358, 372 (1983).

Judge Vanek rejected plaintiffs' contention that Ordinance 15.186 was an unlawful delegation of authority to the Corporation Counsel and Business Administrator. She noted the ordinance provided sufficient guidance because it required any OFA actually submitted by the City comply with applicable law. The judge

21

additionally observed that the ordinance required further council approval if the purchase price for the Embankment exceeded $5.7 million. In short, the ordinance provided sufficient guidance for the City's executive officers to consummate the council's delegated functions. Again, we agree with the trial judge's reasoning and reject plaintiffs' argument.

Plaintiffs further argue that the City failed to comply with the OPMA because the council did not adopt Ordinance 15.186 in true de novo proceedings. Plaintiffs also contend that the City waived any attorney-client privilege by attaching a redacted transcript of the September 8, 2014 meeting to the ordinance, and the judge erred in finding the City complied with OPMA without compelling the City to produce an unredacted copy for the public.

In her written decision, Judge Vanek concluded the City did not need to repeat anew all that was said at the September 8, 2014 meeting, which violated the OPMA. The Corporation Counsel had appraised the council members of the City's reliance upon what took place at that meeting, and the council and members of the public were given the opportunity to review what had transpired by reading the transcript. The judge's opinion cited to the vigorous debate among council members, and between the council and the public, at the January 16, 2016 meeting. She reasoned the City had adequately considered de novo the ordinance, concluding

the proceedings "satisfie[d] the purpose and spirit of [the] OPMA of transparency in government." The judge rejected plaintiffs' claims regarding the redacted transcript, concluding the court had ruled in prior litigation what portions of the transcript were privileged and subject to redaction, the assertion of privilege did not violate the OPMA and the City had not waived the privilege. We again agree.

"[The OPMA] makes explicit the legislative intent to ensure the public's right to be present at public meetings and to witness government in action." Kean Federation of Teachers v. Morell, ___ N.J. ___, ___ (2018) (slip op. at 3). "That legislative intent is balanced by an express recognition that public bodies must be allowed to exercise discretion in determining how to perform their tasks . . . ." Ibid. (citations omitted).

Actions taken by a public body at a meeting that does not conform to the OPMA's requirements are voidable. N.J.S.A. 10:4-15(a). However, a public body "may take corrective or remedial action by acting de novo at a public meeting held in conformity with" the statute. Ibid. In the context of the OPMA, the phrase "de novo" means "to consider anew, or afresh, for a second time." Houman v. Pompton Lakes, 155 N.J. Super. 129, 164 (Law Div. 1977). By using this phrase, the Legislature intended "that a public body . . . must reconsider its action completely anew, for a second

time, in full compliance with all the requirements" of the OPMA. Ibid.

N.J.S.A. 10:4-15(a) "contemplate[s] maximum flexibility in rectifying governmental action which falls short of the standards of openness prescribed for the conduct of official business." Polillo v. Deane, 74 N.J. 562, 579 (1977); see Precision Industrial Design Co. v. Beckwith, 185 N.J. Super. 9, 19 (App. Div. 1982) (holding that Polillo requires "the nature, quality and effect of the noncompliance with the [OPMA] be considered in the judicial fashioning of an appropriate remedy"). Notably, in Polillo, 74 N.J. at 580, the Court specifically approved of the public entity's discretionary authority to utilize testimony and evidence received at prior hearings that violated the OPMA.

We also agree with Judge Vanek's conclusion that the City's decision to utilize the redacted transcript of the September 8, 2014 meeting did not waive its assertion of attorney-client privilege. As she noted, the trial court had already acknowledged that some portions of the transcript were privileged. The OPMA excepts "matters falling within the attorney-client privilege" from disclosure at a public meeting. N.J.S.A. 10:4-12(b)(7).

To the extent we otherwise have not specifically addressed plaintiffs' arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

24                                                    A-4421-15T2

Affirmed in A-0195-16.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

25

A-4421-15T2